**CITY OF ALAMO, Appellant,**

**v.**

**Armando CASAS and Amelia Casas, individually and in their respective capacities as Next Friend of Armando Rene Casas, a Minor, Appellees.**

**No. 13-94-043-CV.**

Court of Appeals of Texas,
Corpus Christi.

Dec. 4, 1997.

Rehearing Overruled Feb. 12, 1997.

Israel Ramon, Jr., Law Offices of Israel Ramon, Jr., James E. Darling, Marcel C. Notzon, III, Ramon & Cantu, McAllen, for appellant.

Laurence W. Watts, Watts & Associates, Houston, Joseph A. Connors, III, McAllen, Michael McEnrue, Mosier & McEnrue, Stephen P. Glover, Groves & Glover, Houston, for appellees.

Before YANEZ, CHAVEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Justice.

The City of Alamo (hereinafter "the City") brings this appeal from a judgment rendered against it after a jury trial.[1] As next friends of their son Armando Rene Casas (hereinafter "Rene"), and in their individual capacities, Armando and Amelia Casas brought suit against the City, its police department, Alamo Police Chief Ruben DeLeon, and two other officers (Ruben Espinzoa and James Boreman), for damages resulting from Rene's arrest and subsequent harassment by the defendants. After the jury rendered a verdict in favor of the plaintiffs, the trial court rendered judgment against the City in the amount of $1,095,021.12. By twenty-five points of error, the City challenges the judgment. We affirm in part and reverse in part.

---

1. Although there were multiple defendants at trial and this appeal is styled "City of Alamo *et. al.*," the judgment in the trial court was rendered only against the City of Alamo, and the City of Alamo is the only appellant in the present action.

## NATURE OF THE CASE

The Casases' lawsuit was based on events which occurred in 1986 in connection with the arrest of Rene. On April 20, 1986, Rene offered to sell a bicycle he was riding to a stranger outside a grocery store in Alamo, Texas. That person, Catalina Aguilar, became suspicious that Rene had stolen the bicycle, and called the Alamo police. Officers Ruben DeLeon, Jr. (not related to the police chief), and Ruben Espinoza were dispatched to the scene. They questioned Rene about the bike, which Rene denied owning. As the officers approached the store, Rene attempted to flee. As Officer Espinoza attempted to detain Rene, they both fell to the ground. Rene was hand-cuffed and taken to the police station and questioned. While Espinoza and DeLeon, Jr., attempted to obtain Rene's name, another scuffle ensued, and Rene's front teeth were chipped. Espinoza and De-Leon Jr. maintained that Rene had lashed out at the officers, and was injured while they attempted to restrain him. Rene testified that he orally offended the officer and was assaulted by Espinoza in retaliation for his comments.

Rene's parents were summoned to the police station, and when they arrived, they noticed he had chipped teeth and several bruises. They demanded a meeting with Chief DeLeon and requested that the officers be disciplined. When they did finally meet with the chief, he allegedly told them their son had a big mouth and "had it coming." The Casases reported the incident to the Federal Bureau of Investigation ("FBI"), which conducted its own investigation.

Although the FBI's investigation did not result in any specific finding of wrongdoing, the Casases alleged that Rene was subsequently harassed and arrested by the Alamo police. He was stopped by Officer Boreman while riding in a car with his uncle, his cousin, and a friend. After he refused to provide any information beyond his name,

Boreman allegedly stepped on Rene's foot, brought him to the police station, and interrogated him in the presence of the chief. Rene was charged with possession of marihuana, a charge which was later dismissed. He was also charged with other offenses subsequent to his initial arrest, some of which were dismissed. He was charged and convicted of burglary of a habitation.

## THE LAWSUIT

By their original and only petition, filed on February 18, 1988, appellees brought this action against the City and the police department, as well as Chief DeLeon, and officers Boreman [2] and Espinoza, in their individual and official capacities. Appellees alleged false arrest, excessive force, malicious conspiracy, and violations of Rene's civil rights. In addition to a recitation of the April 20, 1986 arrest, the petition alleged: (1) another subsequent incident where Rene was arrested without cause, (2) an incident in which the police asked a third party if he would claim responsibility for injuries Rene sustained during the initial arrest, and (3) that Rene was charged with three offenses by the Alamo police, all of which were subsequently dismissed. The petition also generally alleged a "malicious conspiracy" by the City, the police department, its chief, and its officers.

There were no allegations regarding actions taken by the defendants against either Armando or Amelia Casas individually. There were significant delays in the prosecution of the suit after its commencement, such that it was dismissed twice and had to be reinstated upon motion of the plaintiffs.[3] Before trial commenced in this case, both sides agreed that they were satisfied with their pleadings and would not make any subsequent amendments.

The case was tried to a jury over the course of five weeks. At the close of its case-in-chief, the City moved for a directed ver-

---

**2.** Boreman was non-suited before the commencement of trial.

**3.** In response to the City's motion to dismiss, Armando Casas executed an affidavit, which explained the nature of the action. He claimed that his son, in addition to the parents, were

entitled to compensation for the false arrest, detention, excessive force used against Rene, and the subsequent filing of several charges against him. No mention is made regarding the violation of the rights of the parents individually.

dict on all claims against it, which the trial court denied. Before the charge was submitted to the jury, the plaintiffs non-suited Espinoza and Chief DeLeon, individually, leaving the City as the only remaining defendant. The parties also stipulated that Chief De-Leon was a policymaker for the City, and that the attorney's fees sought by the plaintiffs were reasonable.

## THE CHARGE AND THE VERDICT

The court posed four questions to the jury. The first question asked if Espinoza had violated the constitutional rights[4] of Rene, Amelia, and/or Armando Casas, thereby causing damages. The second asked whether Chief DeLeon had violated the rights of each plaintiff. Question three, predicated upon an affirmative finding to question one, asked whether it found by a preponderance of the evidence that Chief DeLeon, as a policymaker for the City of Alamo, authorized, approved, or knowingly acquiesced in the unconstitutional conduct of Espinoza, if any. And question four, which was only to be answered if the jury answered "yes" to questions two or three, asked the jury to calculate the amount of damages which would compensate each of the plaintiffs for their damages.

The jury answered "no" to all parts of question one, "yes" to all parts of question two, properly ignored question three, and calculated the damages under question four at $200,000 for Rene, and $100,000 each for Armando and Amelia Casas. The trial court added in prejudgment interest dating from October 20, 1986, and entered judgment awarding $467,510.56 to Rene, and $233,-755.28 each to Armando and Amelia Casas, plus a total of $160,000 in reasonable and necessary attorney's fees.

## POINTS ON APPEAL

The City presents twenty-five points of error, alleging numerous grounds for reversal. It attacks the sufficiency of the evidence

in support of the jury's liability and damages findings, and contends that the trial court erred by denying its motion for instructed verdict, motion for judgment notwithstanding the verdict, motion to disregard jury findings, and its motion for new trial. The City also contends that reversible error occurred when the trial court admitted certain evidence over objection, when it made inappropriate comments from the bench, and when it awarded pre-judgment interest to appellees.

Broadly speaking, points one through fifteen challenge the sufficiency of the pleadings to support recovery, the sufficiency of the evidence, and rulings made by the court in relation to the alleged insufficiency of the evidence (failure to grant directed verdict, failure to disregard jury findings, failure to grant new trial). Points sixteen through nineteen complain about the court's admitting evidence of irrelevant alleged acts of misconduct by Chief DeLeon and his officers. Points twenty through twenty-two argue that the trial court made inappropriate comments from the bench which prejudiced the City. Finally, points twenty-three through twenty-five challenge the inclusion and calculation of prejudgment interest in the judgment.

## "SUFFICIENCY" POINTS

Points one through fifteen all challenge the sufficiency of the evidence or the pleadings to support the judgment against the City. We commence with points one through three, and eight through fifteen, because they all challenge the trial court's denial of its motion for instructed verdict, and its motion to disregard jury findings.

Before we address the points on the merits, however, we must consider whether they have been properly preserved. Appellees contend that the City has waived any alleged errors because the court's rulings on the motion for instructed verdict and the motion for directed verdict do not appear in a formal order or in the judgment itself.

---

4. The court further explained that "a person has the constitutional right: (1) to be free from false arrest; (2) to be free from clearly excessive force that is objectively unreasonable and that results in significant injury; (3) to be free from repeated arrests by the police as retaliation for the reporting of alleged police misconduct; and (4) to be free from a conspiracy to cover up alleged police misconduct."

We have previously held the overruling of a motion for an instructed verdict will be reviewed on appeal only if it was recited in a formal order or in the judgment. *Soto v. Southern Life & Health Ins. Co.*, 776 S.W.2d 752, 754 (Tex.App.—Corpus Christi 1989, no writ). Consequently, we, among other courts, have refused to consider such alleged error without a formal order or a recital in a judgment. *Id.; see also Western Co. of N. Am. v. Southern Pac. Transp. Co.*, 819 S.W.2d 952, 956 (Tex.App.—Austin 1991, no writ); *Superior Trucks, Inc. v. Allen*, 664 S.W.2d 136, 145 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Steed v. Bost*, 602 S.W.2d 385, 387 (Tex.Civ.App.—Austin 1980, no writ); *Southwestern Materials Co. v. George Consol., Inc.*, 476 S.W.2d 454, 455 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

■ Although the denial does not appear in the judgment, the City did obtain a written denial of its motion for instructed verdict from the trial court. The transcript contains the handwritten ruling of the trial court.[5] We consider it clear and unequivocal, and thereby sufficient to preserve the point for appeal.

■ With regard to a motion to disregard jury findings, any error in denying such motion is not preserved unless the record reflects that such motion was presented and ruled on by the trial court. *Quintero v. Citizens and Southern Factors, Inc.*, 596 S.W.2d 277, 279 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ); *Ballard v. Hillcrest State Bank*, 592 S.W.2d 373, 375 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.). Unlike the motion for instructed verdict, we found no case law pertaining to motions to disregard jury findings which specify whether a court's ruling need be in writing, or whether an oral denial in open court suffices to preserve error. Nevertheless, it is clear that *some* ruling must appear in the record in order to preserve this point. Tex.R.App. P. 33.1.

■ No ruling of any kind, oral or written, pertaining to the City's motion to disregard appears in the record. The City cites us to Texas Rule of Civil Procedure 329 for the proposition that such motion can be, and in fact was, overruled by operation of law. Rule 329 specifically pertains to *post-judgment* motions, however, and does not support the City's position. In the absence of a ruling on the motion to disregard jury's findings, the City has presented nothing for review. Therefore, we will not consider points two, three, twelve, thirteen, fourteen, or fifteen.

We next consider points one, eight, nine, ten, and eleven, by which the City contends that the court erred in denying its motion for instructed verdict and judgment notwithstanding the verdict. Point one alleged there was no legal evidence to support recovery by Rene against the City, points eight and nine maintained that Armando and Amelia had not stated a civil rights cause of action, respectively, and points ten and eleven allege that there was no evidence to support findings of liability in their favor.

■ A directed or instructed verdict is proper when: (1) a specifically indicated defect in the opponent's pleadings makes it insufficient to support a judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Nelson v. American Nat'l Bank of Gonzales*, 921 S.W.2d 411, 414 (Tex. App.—Corpus Christi 1996, no writ); *Rowland v. City of Corpus Christi*, 620 S.W.2d 930, 932–33 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). We review the denial of an instructed verdict by a legal sufficiency or "no evidence" standard of review. *City of Alamo v. Montes*, 904 S.W.2d 727, 732 (Tex. App.—Corpus Christi 1995), *writ dism'd*, 934 S.W.2d 85 (Tex.1996).

■ In reviewing a no evidence point, we must consider only the evidence and reasonable inferences therefrom which tend to

5. At the bottom of the motion, the following writing appears: "11/20/92—Denied by the court prior to reading the charge to the jury—Signed November 20, 1992, Joe B. Evins, Presiding Judge."

support the jury findings, disregarding all contrary evidence and inferences. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.,* 774 S.W.2d 666, 668 (Tex.1989). If there was some evidence which would support submitting an issue to the jury, then the trial court commits no error in denying a motion for instructed verdict. *Murray Corp. of Maryland v. Brooks,* 600 S.W.2d 897, 903 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.); *see In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). We sustain a legal sufficiency challenge when the record discloses (1) that there is a complete absence of evidence of a vital fact, (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) that the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) that the evidence conclusively establishes the opposite of the vital fact. *Cecil v. Smith,* 804 S.W.2d 509, 510 n. 2 (Tex.1991).

We will discuss the propriety of the court's ruling on the City's motion by considering the evidence offered by each of the appellees separately.

## I. ARMANDO RENE CASAS

In its first point, the City contends the court erred in not granting its motion for instructed verdict and its motion for judgment notwithstanding the verdict because there was no evidence to support a finding against the City. In its motion, the City maintained that the evidence was insufficient as a matter of law to justify submitting the alleged cause of action by Rene against the City. Under the above-mentioned standard of review, if there was any probative evidence presented by which the City could be deemed liable for Rene's alleged constitutional deprivations, the court could properly deny the motion. We begin our analysis with the allegations in the petition.

Although the petition did not specifically refer to 42 U.S.C. § 1983 [6] as the basis for recovery, it is apparent from the record that the parties treated this statute as the basis upon which the City could be liable. Therefore, we refer to the case law interpreting that statute.[7] There are two elements necessary for recovery under section 1983: first, a plaintiff must prove the defendant deprived him of a right secured by the constitution and laws of the United States, and second, the plaintiff must prove the defendant deprived him of this right under color of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970); *Thomas v. Collins,* 860 S.W.2d 500, 502 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Local governments are considered "persons" subject to liability under section 1983. *Monell v. Department of Soc. Serv. of City of New York,* 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036–37, 56 L.Ed.2d 611 (1978). A municipality can be sued directly if the action alleged to be unconstitutional implements a decision officially adopted and promulgated by that body's officers. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–38.

However, the municipal policy itself must cause the constitutional tort; the City is not liable merely because it employs a tort-feasor. *Id.* As the Supreme Court has recently stated, "it is not enough for a § 1983 plaintiff to merely identify conduct attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged."

**6.** Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or District of Columbia, subjects, or authorizes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 1994).

**7.** It is arguable that appellees' "conspiracy" theory is more appropriately encompassed by 42 U.S.C.A. § 1985, which provides a cause of action for a person who is conspired against by two or more persons, whose purpose is to deprive, either directly or indirectly, the person of the equal protection of the laws, or of equal privileges and immunities granted by state or federal law. 42 U.S.C.A. § 1988 (West 1994). However, the essential allegations are nonetheless sustainable under section 1983.

*Board of Commissioners of Bryan Co. v. Brown*, —— U.S. ——, ——, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Proof that a municipality's authorized decision-maker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. *Id.* at ——, 117 S.Ct. at 1388.

Thus, in order to prevail against the City, each plaintiff was required to establish that he or she had personally suffered a constitutional deprivation, and second, that the City itself was sufficiently involved with the deprivation so as to be liable. Although Chief DeLeon and the City were named as defendants in the pleadings, the specific allegations contained therein related to actions taken by two individual police officers: Espinoza and Boreman. The only specific allegation relating to Chief DeLeon maintained that he was present while Boreman interrogated Rene on July 16, 1986. The petition alleged that Chief DeLeon gave his approval to Boreman's misconduct of Rene by failing to intervene. Elsewhere in the petition, appellees generally alleged a "malicious conspiracy," although neither the object nor the participants of the alleged conspiracy were specified. The petition did allege Rene had been subsequently arrested and charged with different offenses by Alamo police, but the charges were eventually dropped.

Much of the evidence adduced at trial related to the arrest and detention of Rene on April 20, 1986. Rene testified he was handcuffed and detained at the police station. He claimed officers Espinoza and DeLeon, Jr., were interrogating him, but he refused to give them his name, and his resistance to their questioning began to frustrate the officers. He testified that Espinoza stood behind him, holding his arm throughout the interrogation. Rene complained the officers had not read him his rights. When Rene demanded that Espinoza release his arm, Espinoza announced he was going to search Rene's pockets to see what he had. As Espinoza attempted to search Rene's pockets, Rene began to move, and asked Espinoza if he was "a faggot." Espinoza reportedly got angrier and shoved Rene from behind, causing him to fall and to hit his face against the chair. Although not present at the time of this incident, Chief DeLeon was apprised of Espinzoa's use of force during a meeting with Rene's parents. The Casases had hoped Chief DeLeon would discipline the officers, but he reportedly told the parents that "Rene deserved it." When Armando and Amelia expressed their intention of raising the matter elsewhere, they testified that Chief DeLeon told them that they would regret it.

Subsequently, Rene was arrested by Boreman, and taken to the police station. As part of their investigation into the incident, Alamo police contacted faculty at the school from which Rene had been expelled and inquired into prior misconduct. Chief DeLeon spoke with the father of one of Rene's former classmates and asked whether he would be willing to say that he broke Rene's teeth in a fight. Charges were filed against Rene for theft of bicycle, resisting arrest, assault on a police officer, and possession of marihuana. Some charges were dismissed, and Rene was placed on probation for others. Alamo police searched the Casas family home after a warrant was issued in relation to a burglary in McAllen, Texas, in which Rene was the suspect.

 Officer Espinoza's actions, when viewed in the light most favorable to the verdict, amounted to excessive force.[8] Chief

---

8. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)(in analyzing claim based on use of excessive force, Fourth Amendment standard of objective reasonableness must be used). Reasonableness of force is to be judged from the perspective of a reasonable officer on the scene without regard to his mental state. *Id.*, 490 U.S. at 396, 109 S.Ct. at 1871–72. Three elements must be proven in order to recover for damages arising from the use of excessive force in making an arrest: (1) a significant injury, (2) resulting directly and only from the use of force excessive to the need, and (3) the excessiveness of the force was objectively unreasonable. *Hay v. City of Irving*, 893 F.2d 796, 798 (5th Cir.1990); *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989); *City of San Antonio v. Dunn*, 796 S.W.2d 258 (Tex.App.—San Antonio 1990, writ denied). Minor injuries that would have occurred without the excessive force are not actionable under this cause of action. *Morel*, 876 F.2d at 480. Whether the injuries are "constitutionally significant" is a fact issue. *Id.* at 479.

DeLeon, as the head of the police department and policymaker of the City, ratified that behavior by refusing to acknowledge any problem with the manner of the interrogation, saying Rene deserved it, and warning the family it would "regret" reporting the incident to the FBI. Based on this evidence alone, the court was justified in denying the motion for instructed verdict with respect to Rene's claims against the City. The fact that the jury eventually found that Espinoza did not violate any of Rene's rights does not necessarily mean that there was no evidence presented which could have supported a contrary finding. Because we review the court's decision strictly on a legal sufficiency standard, we are compelled to hold that it did not commit reversible error in overruling the City's motion for instructed verdict. Point of error one is overruled.

## II. AMELIA CASAS

By points nine and eleven, the City contends the court erred in refusing to grant an instructed verdict in its favor, because there was no cause of action alleged in the pleadings, and because there was no evidence presented upon which recovery could be granted.

■■■■■ The rights protected by section 1983 are personal in nature, and the right to bring suit under the statute is vested solely in the person who suffered the deprivation, and does not accrue to a relative. *Coon v. Ledbetter*, 780 F.2d 1158, 1160 (5th Cir.1986). Therefore, in order for Rene's parents to have been entitled to recover damages, they needed to have pleaded and proved that the City violated each of their individual rights. They, as individuals, were not entitled to recover for the violations of their son's rights.

■■■■■ There were no allegations in the petition regarding actions taken by any Alamo police officers, its chief, or the City, against Amelia Casas directly. Rather, the petition only described actions taken by the police against Rene Casas. In order to support recovery, a petition is required to contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX.R. CIV. P. 47(a). The test of

the "fair notice" pleading requirement is whether an opposing attorney of reasonable competence, with pleadings before him, can ascertain nature and basic issues of controversy and testimony probably relevant. *See* TEX.R. CIV. P. 45(b); *State Fidelity Mortg. Co. v. Varner*, 740 S.W.2d 477, 479 (Tex. App.—Houston [1st Dist.] 1987, writ denied). The purpose of the fair notice rule is to give the opposing party information sufficient to enable him to prepare a defense. TEX.R. CIV. P. 45, 47; *Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex.1982); *Murray v. O & A Express, Inc.*, 630 S.W.2d 633, 636 (Tex. 1982); *Castleberry v. Goolsby Bldg. Corp.*, 617 S.W.2d 665, 666 (Tex.1981).

■■■■■ Based on the petition, appellees sought recovery for the mistreatment of their son by police, and for an unspecified "malicious conspiracy." Appellees contend that any ambiguity in the pleadings must be resolved in their favor because the City never specially excepted to the petition on this basis. It is true that, when there are no special exceptions, a petition will be construed liberally in favor of the pleader. *Roark*, 633 S.W.2d at 809; *Stone v. Lawyers Title Ins. Corp.*, 554 S.W.2d 183, 186 (Tex. 1977). When a pleading is challenged, a court will "look to the pleader's intendment and the pleading will be upheld even if some element of a cause of action has not been specifically alleged. Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Roark*, 633 S.W.2d at 809–10; *Gulf, Colorado & Santa Fe Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex.1963).

■■■■■ In determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able to ascertain with reasonable certainty, and without resorting to information outside the pleadings, both the elements of plaintiff's cause of action and relief sought with sufficient information upon which to base a judgment. *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex.1979); *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1991, writ denied). We have concluded that, even if we attempt to infer supporting facts in

appellees' favor, the petition does not state a cause of action by Rene's parents. The City could not be expected to be on notice of any claims they might have attempted to prove.

 Even at trial, the evidence presented did not support the inclusion of Rene's parents in the charge as persons possibly entitled to recover damages. Amelia Casas testified regarding the behavior of her son prior to the April 20, 1986 arrest, and how it changed in the following months and years. She also testified that Alamo police had entered her home in pursuit of her son after he was suspected of committing burglary in McAllen, Texas.[9] She said that the officers waived guns inside the house, and that she was afraid for the safety of her children. She also testified that, based on the problems her son had with the police department, she was extremely cautious in obeying the law, and was afraid of any encounters with police.

There was no evidence presented at trial that Amelia Casas was ever falsely arrested, falsely imprisoned, subjected to excessive force, or otherwise directly targeted by Alamo police. Her mental anguish was attributed largely, if not completely, to the perceived mistreatment of her son by members of the police force. There was no evidence presented by which the jury could have inferred she was the victim of a malicious conspiracy.

Because there were no allegations in the petition which, if proven, would have entitled Amelia to recovery, and no evidence adduced at trial which would have supported recovery, the trial court erred in not granting the City's motion for instructed verdict with respect to Amelia. Without any basis for liability, there also could not be any basis for the payment of damages to Amelia Casas by the City. Points nine and eleven are sustained. Because this point also resolves the issues presented by point six, we need not address that point. *See* TEX.R.APP. P. 47.1.

## III. ARMANDO CASAS

As with Amelia, there were no allegations in the petition regarding any deprivations of Armando's rights. Aside from the brief mention that he went to the police department and witnessed his son in a battered state, and had a disturbing conversation with the police chief, he was not even mentioned. Based on the enumerated list of causes of action, the only one which could possibly involve a deprivation of Armando's rights was "malicious conspiracy." However, even that cause of action did not state the conspiracy's objective, nor was it accompanied by supporting allegations.

The evidence presented at trial did not shed any further light upon his basis for recovery. Armando testified as to the changes in his son's behavior after the April 20, 1986 arrest. Armando also testified as to his outrage when he picked up his son that day and noticed his injuries. He said that he had met with Chief DeLeon after the incident to voice his complaints, and that the chief simply said that his son had a big mouth and had it coming. At the conclusion of the meeting, Armando said that he had no choice but to seek legal advice, at which point Chief DeLeon responded "you're going to feel sorry. You're going to regret it." Although Armando also recounted the trouble his son had with police after that day, he did not claim any actions taken against him, personally. There was no evidence of any false arrest, imprisonment, or malicious conspiracy of any kind directed at Armando Casas individually.

Even if it could be argued that the pleadings could be construed to support a claim by Armando, there simply was no evidence presented that entitled Armando to recovery individually. There was not any evidence he was falsely arrested, falsely imprisoned, or subjected to excessive force.

Based on the failure of the pleadings to state a cause of action by Armando, as well as the absence of legally sufficient evidence to support recovery on his part, we conclude the trial court erred in overruling the City's motion for an instructed verdict on his claims. Points eight and ten are sustained. Because these points negate any basis for the

---

9. There was evidence that the search of their house was made pursuant to an arrest warrant issued in connection with a burglary in McAllen, Texas, for which he was ultimately convicted.

recovery by Armando Casas, we need not address point five. *See* Tex.R.App. P. 47.1.

## DAMAGES

In point four, the City contends the court abused its discretion in denying its motion for new trial. In its motion for new trial, the City alleged the court erred in entering judgment because there was no evidence, or insufficient evidence, to support the jury's answer to the question regarding Rene's damages. It also contended that, because the jury found in favor of Espinoza, the evidence was insufficient to support the award of damages to the plaintiffs. The City maintained the award was so high that it shocks the conscience, and should be reduced.

 A trial court may deny a motion for new trial, and this denial will not be disturbed on appeal absent an abuse of that discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984); *Moya v. Lozano*, 921 S.W.2d 296, 298 (Tex.App.—Corpus Christi 1996, no writ). The City, by its post-verdict motion, alleged there was no evidence to support the damage finding, and, if the court found that there was, the amount awarded was excessive and justified a remittitur. If the trial court concluded there was no evidence of damages, it would have been obliged to render a take-nothing judgment. *Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex.1987). If it concluded there was some evidence of damage, but the award was excessive, it should have suggested a remittitur and conditioned the award of a new trial if the prevailing party refused to remit some of the damages. *Galveston County Fair & Rodeo, Inc. v. Glover*, 880 S.W.2d 112, 122 (Tex.App.–Texarkana 1994, writ denied, per curiam). The trial court does not have the authority to "order" a remittitur, however. *Id.*; *Highlands Ins. Co. v. Baugh*, 605 S.W.2d 314, 319 (Tex.Civ.App.—Eastland 1980, no writ).

 With these standards in mind, we next consider the injuries which are compensable in a civil rights suit. The basic purpose of damages under section 1983 is to compensate persons for injuries that are caused by deprivation of constitutional rights. *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986). Compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering. *Id.* Although courts examining claims for damages under section 1983 should look to the common law for guidance, it has been said that constitutional claims should not be tried to fit into the "Procrustean bed of common law tort" if there is no analogous common law tort. *Chatman v. Slagle*, 107 F.3d 380, 384 (6th Cir.1997). The court instructed the jury that, in considering the damage award necessary to compensate Rene, it could only consider:

— physical pain and mental anguish;

— time lost from employment;

— medical care and medical expenses;

— physical impairment and disfigurement;

— shame and humiliation; and/or

— impairment of the relationship between Rene and his parents.

The City's liability was predicated on the finding that Chief DeLeon violated Rene's right to be free from (1) use of excessive force, (2) false arrest, (3) repeated arrests by the police as retaliation for the reporting of alleged police misconduct, and/or (4) a conspiracy to cover up alleged police misconduct. The jury was not required to specify which right, if any, was violated.

We can deduce, based on the jury's finding that Espinoza had not violated Rene's rights in any manner, its award of damages did not rest on the April 20, 1986 incident. Moreover, the finding cannot rest on the allegation in the petition that DeLeon participated in a "brutal" interrogation by Boreman, because no evidence was adduced at trial in support of that allegation. There was no direct evidence presented regarding any use of excessive force by DeLeon personally against Rene.[10] Thus, the only potential basis upon

10. Over the City's hearsay objections, the court permitted former Alamo Municipal Judge Fran-

which the jury could have awarded damages was either upon a finding of false arrest, retaliation, or conspiracy to cover up police misconduct.[11] Although the evidence in support thereof is questionable, no complaint about the factual sufficiency of the evidence in support of the liability findings is properly before this Court, and therefore, we will presume liability was established in some manner.

▮ Appellees did not present any evidence of time lost from employment, physical impairment or disfigurement, shame or humiliation. Although there was some evidence of physical damage, it was based solely on the April 20, 1986 incident, and therefore was not a basis for recovery against the City; the jury found no rights had been violated by Espinoza, and therefore injuries sustained in that incident could not form a basis of recovery.

▮ Excluding the above as possible bases for recovery, we are left with mental anguish and impairment of Rene's relationship with his parents. Federal courts have upheld damages awards in section 1983 claims as compensation for "humiliation" and "personal indignity," as well as for "emotional distress," even in the absence of medical testimony or other evidence demonstrating its severity. *See Chatman,* 107 F.3d at 384–85; *Miner v. City of Glens Falls,* 999 F.2d 655, 663 (2nd Cir.1993); *Baskin v. Parker,* 602 F.2d 1205, 1209–10 (5th Cir.1979). Under State law, too, a party may recover damages for mental anguish without having suffered any physical injury. *St. Elizabeth Hosp. v. Garrard,* 730 S.W.2d 649, 654 (Tex. 1987), *overruled on other grounds, Boyles v. Kerr,* 855 S.W.2d 593, 597 (Tex.1993); *Cronin v. Bacon,* 837 S.W.2d 265, 269 (Tex. App.—Fort Worth 1992, writ denied). Texas courts recognize exceptions to the general rule that a physical manifestation of emotional distress be demonstrated before such anguish may be compensated. *See Moore v. Lillebo,* 722 S.W.2d 683, 684–85 (Tex.1986). These exceptions have involved cases of in-

tentional torts, gross negligence, or a willful and wanton disregard for another's rights. *Id.* at 685.

▮ "Mental anguish" as an element of damages implies a relatively high degree of mental pain and distress; it is more than mere disappointment, anger, resentment, or embarrassment, although it may include all of these, and it includes mental sensations of pain resulting from such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair and/or public humiliation. *Trevino v. Southwestern Bell Tel. Co.,* 582 S.W.2d 582, 584 (Tex.Civ.App.— Corpus Christi 1979, no writ). The Texas Supreme Court has held a party may not recover for mental anguish without either "direct evidence of the nature, duration, or severity of [plaintiffs'] anguish, thus establishing a substantial disruption in the plaintiffs' daily routine," or other evidence of " 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.' " *Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996) (citing *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995)). In other words, in order for mental anguish to be compensable, it must amount to more than an emotion of distress. *Id.* The jurors are deemed best able "to determine whether and to what extent the defendant's conduct caused compensable mental anguish by referring to their own experience." *Garrard,* 730 S.W.2d at 654.

Rene testified regarding the effects of his treatment by police since the April 20, 1986 incident. He said he felt "very negative towards the police," and that if he would see a police officer "even if I wasn't doing anything wrong I would hide or go home or feel ... intimidated." Six years after the first incident, Rene asked his attorney to send him to a counselor, who diagnosed him with post-traumatic stress disorder. Although Rene had one visit with a psychologist, he could not recall if he ever went back.

---

cisco Herrera's testimony that he had heard, from unnamed officers, that Chief DeLeon had roughed up Rene while he was in custody.

**11.** We would note that none of these terms were defined in any instructions to the jury.

Rene's parents also testified about the changes in Rene's behavior since April 20, 1986. His mother said his attitude towards authority figures changed. She described Rene after the incident as "different," "withdrawn," "angry," and "paranoid." She testified he moved to Houston to get away from the Alamo police, but returned after a month because he could not get into school there. His father said that after April 20, 1986, Rene changed and became "very belligerent" and "very argumentative," and would occasionally lock himself in his room. He said Rene talked about suicide, which he had not done before April 20, 1986. He said Rene had "an attitude of fear" towards the police department.

 We must note that we cannot set aside a judgment based on our determination of the credibility of the witnesses. The jury, as the sole trier of fact, is presumed to have been in the best position to judge their credibility and the weight to be afforded their testimony, and we cannot set aside a verdict merely because we would have calculated inherently subjective compensatory damages differently than the jury. With that being said, we consider whether there was legally sufficient evidence to support the award of damages.

Most of the emotions and behavior described by Rene and his parents (feeling negative, being intimidated, acting angry, negative, argumentative, and withdrawn) do not constitute sufficient evidence of mental anguish to allow recovery under Texas law. *See Nix v. Born,* 870 S.W.2d 635, 642 (Tex. App.—El Paso 1994, no writ) (testimony that being emotionally "hurt" and having mental anguish does not rise to level of relatively high degree of mental pain and distress necessary to recover); *Parkway Co. v. Woodruff,* 857 S.W.2d 903, 914–16 (Tex.App.— Houston [1st Dist.] 1993, no writ)( testimony that incident was "upsetting," "caused some friction," and they were upset because "it changed our life style" was insufficient to demonstrate mental anguish); *Phar–Mor, Inc. v. Chavira,* 853 S.W.2d 710, 712–13 (Tex.

App.—Houston [1st Dist.] 1993, writ denied) (being very nervous, upset, and suffering from embarrassment are no evidence of mental anguish); *Roberts v. U.S. Home Corp.,* 694 S.W.2d 129, 136 (Tex.App.—San Antonio 1985, no writ)(testimony that plaintiff was "mad," "embarrassed," and "felt like scum" as a result of defendant's actions was legally insufficient to support a recovery). Under the federal standards, however, harm from such "personal indignity" may be compensable.

Moreover, there was some evidence of severe distress: he talked about suicide, sought professional counseling, moved away from his family to avoid police. This evidence not only militates in favor of finding that the police mistreatment caused mental anguish, but also supports recovery based on the impairment of Rene's relationship with his parents. Although there was evidence that suggested Rene already had behavioral problems before April 20, 1986,[12] there was testimony that the Alamo police substantially altered his life in a negative manner. Because there was legally sufficient evidence Rene suffered some damages, the trial court did not abuse its discretion in denying the motion for new trial on this basis.

 In determining whether damages awarded are excessive, the Texas Supreme Court has indicated both the trial courts and the appeals courts are governed by the same remittitur standard: factual sufficiency. *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex. 1986). In *Pope v. Moore,* the Supreme Court instructed trial and appellate courts as follows:

Lower courts should examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. Courts of appeals also should detail the relevant evidence, and if remitting, state clearly why the jury's finding is so factually insufficient or so against the great

---

12. It was undisputed that, before the April 20, 1986 incident, Rene was involved in numerous fights at school and had previously been expelled

from school, arrested for possession of marihuana, run away from home, and been admitted to a drug rehabilitation clinic.

weight and preponderance of the evidence as to be manifestly unjust.

711 S.W.2d at 624; *see also Malone & Hyde, Inc. v. Hobrecht,* 685 S.W.2d 739, 750 (Tex. App.—San Antonio 1985, writ dism'd by agr.) (courts should exercise sound judicial judgment and discretion in ascertaining what amount would be reasonable compensation for the injury sustained, and treat the balance as excess). The jury's quantification concerning an award of mental anguish damages is extremely difficult to review, and reviewing courts generally defer to the jury's discretion in that area. *See Brown v. Robinson,* 747 S.W.2d 24, 26 (Tex.App.—El Paso 1988, no writ) (recognizing that, once compensable mental anguish is established, the jury's valuation of mental anguish award is practically unreviewable). In this case, the jury found that Chief DeLeon violated Rene's rights by conspiring to cover up police misconduct, and/or by having Rene repeatedly arrested in retaliation for reporting alleged misconduct. The chief's action so distressed Rene that he mistrusted law enforcement, locked himself in his room repeatedly, mentioned suicide, and even moved away from the City for a period of time. We cannot say that the jury abused its fact-finding powers in finding that $200,000 would compensate Rene for the harm he suffered as a consequence. The court did not abuse its discretion in overruling the motion for new trial on this basis. Point four is overruled.

### EVIDENTIARY RULINGS

In points sixteen through nineteen, the City challenges the trial court's admitting evidence of other acts of misconduct by the police chief and other officers. In particular, it argues in points sixteen through eighteen, that the trial court erred in admitting evidence concerning allegations of financial impropriety, bribes, and sexual harassment by Chief DeLeon. By point nineteen, the City alleges error in the admission of evidence regarding allegations that Alamo police officers had undressed a female relative of the appellees in 1988, after the lawsuit had been filed.

In order for evidence to be admissible over an objection that it is irrelevant, the evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R. CIV. EVID. 401; *Donnelley Marketing v. Lionel Sosa, Inc.,* 716 S.W.2d 598, 605 (Tex.App.—Corpus Christi 1986, no writ). The material allegations in this lawsuit involved the use of excessive force, false arrest, and malicious conspiracy, presumably to violate Rene Casas's rights by retaliating for his complaint about the police. The City could be liable if, by policy, practice, or acquiescence, it was responsible for the implementation of constitutionally proscribed activities. The City could also be liable if the evidence established that, by pattern and practice, the City's police force routinely violated rights in the same manner as it was alleged to have violated Rene's rights, then such evidence would be relevant.

In this case, DeLeon was asked about allegations that he was involved in financial improprieties while he was chief. The City objected to the inquiry as "totally irrelevant to any issue in the lawsuit," and such objection was overruled. Further into his testimony, DeLeon was again asked about different allegations that he took bribes. Plaintiffs' counsel also asked him about allegations that he sexually harassed someone, again over the objection of defense counsel that such allegations were irrelevant. Finally, the court admitted testimony from Maria Casas, an aunt of Rene, that she had been detained and questioned by Alamo police in 1988. While she was detained, she claimed to have been abused, disrobed, and photographed by police while she was nude. The City objected to the entirety of this testimony. The court also admitted, over objection, photographs taken in the days following the arrest of Maria Casas illustrating numerous bruises on her arms and legs.

In its consolidated argument under these points, the City lists numerous other prejudicial questions and evidence:

— question about the chief saying he wanted to make a local bar owner "get on his knees and beg for mercy,"

— testimony by Municipal Judge Herrera recounting what unnamed officers

had told him about Chief DeLeon, including:

— officers felt Rene was being treated unfairly,

— items turned up missing from the police department,

— drugs were placed into the vehicles of unsuspecting officers,

— officers referred to the chief as "Little Caesar" and "Hitler,"

— accounts of the chief harassing different citizens, and

— releasing the names of juveniles to Mexican newspapers, in contravention of Texas privacy laws.

The City has not provided separate argument for why each of the above-mentioned references should not have been admitted, nor has it discussed each one separately under this multifarious point of error. Therefore, we will only address those evidentiary rulings which we consider to have been arguably erroneous and significant enough to be considered reversible. *See* TEX.R.APP. P. 74 ("A point of error is multifarious if it embraces more than one specific ground of error, or it attacks several distinct and separate rulings of the court."); *see also City of San Antonio v. Rodriguez,* 856 S.W.2d 552, 567 (Tex.App.—San Antonio 1993, writ denied); *Slentz v. American Airlines, Inc.,* 817 S.W.2d 366, 370 (Tex.App.—Austin 1991, writ denied); *Clancy v. Zale Corp.,* 705 S.W.2d 820, 823–24 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (a court may disregard any assignment of error that is multifarious).

 With regard to the sexual harassment allegation, the court held a conference with the attorneys immediately following the questions regarding the allegations of improprieties. The court agreed that the sexual harassment allegation had no bearing on the merits of the case, and agreed to instruct the jury to disregard the question and answer. After the court instructed the jury to disregard the comment, the City moved for a mistrial, citing to the court in a conference outside the jury's presence the prejudicial effect the mere mention of the allegation would likely have on a jury which consisted of eight women and only four men. We

must, however, presume that the jury followed the court's instruction to disregard that allegation entirely. *Owens–Corning Fiberglas Corp. v. Malone,* 916 S.W.2d 551, 563 (Tex.App.—Houston [1st Dist.] 1996, writ granted). Although the matter was potentially prejudicial, the City had never objected to it on that basis. Point seventeen is overruled.

 The City suggests the allegations against Chief DeLeon referenced in points sixteen and nineteen were also irrelevant to the claims at issue at trial. Whether DeLeon took bribes or misused funds, the City alleges, has no bearing on the whether there was a policy of excessive force or false arrest, nor does it have bearing on any possible allegation of a conspiracy against the Casas family. Appellees argued generally at trial that such actions were relevant towards proving a "pattern and practice" of misconduct by the police department, and was necessary to "get over the hump" to hold the City liable. We agree. Although these allegations do not illustrate a pattern and practice of the type alleged in the petition, they were relevant towards proving that Chief DeLeon, as the policymaker for the police department, had a pattern and practice of abusing his position of authority and acting outside legal parameters. In order to recover against the City, it was crucial to the plaintiff's case that they establish that Chief DeLeon authorized and consented to retaliation against Rene. With this purpose, appellees had offered the testimony of Humberto Gonzalez Acosta, an Alamo citizen and bar-owner who purported to have experienced Chief DeLeon's wrath via systematic arrests of his customers as they left his bar until he was driven out of business. Appellees also introduced evidence of actions taken by Chief DeLeon personally which illustrated his alleged disdain for lawful conduct. Such evidence was relevant to their claims. We do not address whether it may have been excluded as overly prejudicial under Texas Rule of Civil Evidence 403, because such objection was not made at trial.

 When the trial court allowed appellees to question Maria Casas regarding her arrest by Alamo police and her alleged mistreatment while under arrest, the court made

clear that such testimony was only relevant towards establishing the pattern and practice of abuse necessary to prevail against the City. After a lengthy hearing outside the jury's presence, the trial court decided that her testimony could be allowed, despite the fact the incidents about which she had complained all occurred after appellees had already filed the suit. Police conduct after the commencement of the suit, the City argued, was irrelevant to appellees' claims because they could not be considered part of the pattern of conduct which formed the basis of the suit. We disagree. Maria Casas testified she was abused and humiliated by police officers in the station after her arrest, forced to disrobe, and photographed in the nude. Rene Casas also claimed he was mistreated and abused while detained at the police station. Chief DeLeon was still the police chief at that time, and the pattern of conduct by his officers during his tenure was at the heart of appellees' case. Thus, under the liberal policy of permitting any relevant evidence to be introduced at trial, we cannot conclude the trial court abused its discretion in allowing the jury to hear Maria Casas's testimony.

We note, however, that the potentially prejudicial effect of her testimony, and the possibility that it would be considered as evidence of anything other than a pattern of police conduct, was assuaged by the court's instruction to the jury. The court specifically instructed the jury as follows:

> Now, the court is going to allow the testimony of this witness for the limited purpose of whether or not they can establish some kind of a pattern, custom, habit, by the Chief of Police of Alamo and for the limited purpose [sic] ... ultimately you're going to be asked a question about the— whether it was a custom, pattern, and policy of the City of Alamo through the Chief of Police. I'm going to allow this for a limited purpose and a limited purpose only. If, in fact,—and again, I must emphasize you, you are the judges of the credibility of the witnesses, the weight to be given their testimony, and what you determine you yourself to be the truth. But this is not to be admitted against the—Mr. Espinoza at all.

Given this limiting instruction, together with the testimony's general relevance towards establishing that police officers under chief DeLeon's direction engaged in a pattern of misconduct relating to constitutional rights, we cannot say the court erred in admitting the testimony. Point nineteen is overruled.

### JUDICIAL MISCONDUCT

By points twenty through twenty-two, respectively, the City contends the trial court erred in commenting on the testimony of a witness, in commenting to the jury of their constitutional rights when constitutional rights were at issue, and in commenting on his reason for not granting a mistrial because it would be too costly.

 In order to reverse a judgment on the basis of judicial misconduct, an appellate court must find judicial impropriety occurred at trial, coupled with probable prejudice to the complaining party. *Brook v. Brook,* 865 S.W.2d 166, 174 (Tex.App.—Corpus Christi 1993), *aff'd,* 881 S.W.2d 297 (Tex. 1994). Absent a demonstration of prejudice, an improper comment will not warrant a reversal. *Id.*

 In point twenty, the City complains that the court expressed an opinion on the credibility of a witness at trial. When school teacher Aida Gonzalez was being crossexamined by the defense regarding an occurrence in which Rene reportedly called his principal a "liar," she was asked whether such comment was indicative of a well-behaved student. When the witness replied, "Sometimes it has to do with what provoked it," the court said, "that's right." The court's comment allegedly demonstrated its belief that Rene may have been provoked to make the comment. It is clearly improper for the court to comment on his opinion of the credibility or character of the parties in front of the jury. *City of Houston v. Pillot,* 105 S.W.2d 870, 872 (Tex.Com.App.1937). However, in this instance, the court's opinion can only be inferred from his comment after taking several steps. He did not actually express his opinion about Rene's credibility. The witness whose opinion may have been buttressed by the court's comment was not a

vital witness, and the City has not demonstrated how this comment contributed to the rendition of an improper verdict. Point twenty is overruled.

██ Points twenty-one and twenty-two complain about comments the court made outside the presence of the jury. At one point during the trial, the court instructed the jury to take a recess, he told them to get a coffee, and not to smoke too much. After they left, he added, "... you will smoke what you want to smoke, freedom of the constitution." The City contends this comment was improper and warranted a reversal "since the case dealt with the constitution." We see no error in the court's comment. The court's comment bore no relationship to the evidence or the questions at issue at trial. Moreover, the record reflects the jury had already left the courtroom when the comment was made. A comment made outside the presence of the jury cannot constitute a source or prejudice. *See Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex.1986).

██ At another point during trial, counsel for the plaintiffs objected to Espinoza periodically making faces during testimony and signaling to jurors. Counsel for the defense also objected to the plaintiffs continually smiling at jurors. After expressing his displeasure with such antics by the parties and their counsel, the court stated "the only reason that I have not declared a mistrial in this case is because of the tremendous expense that each party in this litigation has already been through and what it will entail in another trial of a similar nature and the cost that would be involved." Such comment, made outside the jury's presence does not reflect any lack of impartiality by the trial court. The City does not state how it was prejudiced by such comment. Accordingly, we overrule point of error twenty-two.

### PRE-JUDGMENT INTEREST

In points twenty-three through twenty-five, the City complains of errors in the court's calculation of pre-judgment interest. It contends pre-judgment interest is not allowed in a federal civil rights claim, that the court erred in compounding the interest an-

nually and by failing to offset periods of delay caused by appellees from its calculations.

██ The Supreme Court has held that the broad characterization of section 1983 claims as personal injury actions best fits the statute's remedial purposes. *Wilson v. Garcia*, 471 U.S. 261, 272, 105 S.Ct. 1938, 1944–45, 85 L.Ed.2d 254 (1985). Federal courts uniformly analogize claims arising out of section 1983 to personal injury claims under state law for purposes of determining the applicable statute of limitations. *See, e.g., Jones v. Preuit & Mauldin*, 763 F.2d 1250 (11th Cir.1985); *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir.1984). The Fourth Circuit has stated that, "in a broad sense, every cause of action arising out of section 1983 which is well-founded results from personal injuries." *Almond v. Kent*, 459 F.2d 200, 204 (4th Cir.1972). In this cause, appellees sought recovery for physical injuries and mental anguish sustained by Rene resulting form the intentional deprivation of his constitutional rights to liberty. Although Rene did not ultimately recover for the physical pain caused during his initial detention, he did recover for the mental anguish caused by the City's police department commencing on that date. Mental anguish is considered a personal injury under Texas law. *See Likes v. City of Tyler*, 910 S.W.2d 525, 528 (Tex. App.—Tyler 1995, writ granted); *Mokry v. Univ. of Texas Health Science Ctr.*, 529 S.W.2d 802, 804–05 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.) (mental anguish is a personal injury within the meaning of the Texas Tort Claims Act). As such, mental anguish damages are among the damages which fall within the ambit of article 5069–1.05, section 6 of the Texas Revised Civil Statutes. TEX.REV.CIV.STAT.ANN. art. 5069–1.05 § 6 (Vernon Supp. 1998) (since repealed and codified without substantive change at TEX. FIN. CODE ANN. § 304.101–08 (Vernon Pamph. 1998), by Act of May 24, 1997, 75th Leg., R.S., ch. 1008, 1, 7 and preamble, 1997 Tex. Sess. Law Serv. 3091, 3435 & 3603); *Acme Boot Co., Inc. v. Montenegro*, 862 S.W.2d 806, 811 (Tex.App.—El Paso 1993, no writ). Therefore, we conclude that because Rene's claims were for personal injuries,

they were subject to the mandatory provisions of art. 5069–1.05, section 6, and the court did not err in awarding it as a matter of law.

■ The City cites *Winograd v. Clear Lake City Water Auth.,* 811 S.W.2d 147, 157 (Tex.App.—Houston [1st Dist.] 1991, writ denied), for the proposition that an explicit finding of the date of the alleged violation of civil rights occurred must precede the award of pre-judgment interest. We disagree. In *Winograd,* the court was faced with a situation where it was not certain whether the jury had already included prejudgment interest in its damage calculation. In this case, the jury's damage award expressly omitted any pre-judgment interest. Therefore, in the absence of an express finding as to the date of the violation does not preclude its calculation. Point of error twenty three is overruled.

By its twenty-fourth point of error, the City maintains the trial court erred in determining that prejudgment interest would run from October 20, 1986, and it erred in compounding the prejudgment interest rather than calculating it as simple interest. We agree.

According to section 6a of article 5069–1.05, "prejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the Defendant receives written notice of a claim, or on the date a suit is filed, whichever occurs first, and ending on the date preceding the date the judgment is rendered." *See former* TEX.REV.CIV.&STAT.ANN. art. 5069–1.05 § 6(a) [current version at TEX. FIN. CODE ANN. § 304.104 (Vernon Pamph. 1998)]. In the instant case, there was no evidence presented in the record demonstrating that appellees ever provided written notice of a claim prior to the filing of its petition of February 18, 1988.

■ The trial court, in its judgment, ordered that prejudgment interest to accrue from October 20, 1988. The date appears to be six months from the date of Rene's initial arrest and the date of appellees' initial altercation with Chief DeLeon. We presume that this determination is attributable to the parties' misguided agreement that article 5069–1.05 does not apply, but that the award of prejudgment should be calculated under *Cavnar.* Under *Cavnar,* where damages accrue intermittently, as in the present context, prejudgment interest is calculated from a date six months after the initial causative event. *See Texas Commerce Bank v. Lebco,* 865 S.W.2d 68, 82–83 (Tex.App.—Corpus Christi 1993, writ denied). Under article art. 5069–1.05 § 6, it was appropriate to commence accrual of prejudgment interest from the date of the petition, February 18, 1988.

The applicable statute also provides that any prejudgment interest be calculated at the same rate as post-judgment interest, and it shall be computed as simple interest. *See former* TEX.REV.CIV.&STAT.ANN. art. 5069–1.05 § 6(g) [current version at TEX. FIN. CODE ANN. § 304.103 (Vernon Pamph. 1998)]. Any compounding of the prejudgment interest would therefore be improper. Point of error twenty four is sustained.

■ By its final point of error, the City contends that the trial court abused its discretion in refusing to offset from its interest calculations those periods of delay attributable to appellees. In the instant case, there was evidence presented to the trial court which demonstrated that appellees bore at least some responsibility for not diligently prosecuting this matter. In fact, the record contains evidence that the cause was twice dismissed for failure to prosecute. It would appear that penalizing the City for significant delays in bringing the case to trial which were not attributable to it would conflict with the underlying rationale for prejudgment interest.

We would simply point out that section provides that "the court *in its discretion may* order that prejudgment interest does not accrue during periods of delay caused by the claimant." TEX.REV.CIV.STAT.ANN. art. 5069–1.05 § 6(d) (emphasis added) [current version at TEX. FIN. CODE ANN. § 304.108 (vernon Pamph. 1998)]. The statute does not mandate such offsetting, which is entirely within the discretion of the trial court. We will not substitute our opinion for that of the trial court in this regard. Point of error twenty-five is overruled.

We reverse the judgment of the court with respect to the liability findings in favor of Armando and Amelia Casas. We affirm the judgment with respect to the finding in favor of Armando Rene Casas. However, we remand the cause to the trial court to recalculate the prejudgment interest award according to the provisions of former Texas Revised Civil Statutes & Remedies Code art. 5069–1.05, section 6 which are now contained in chapter 304 of the Texas Finance Code.