NUMBER 13-99-722-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


STEVE WIMBERLY, D/B/A WIMBERLY ERECTION COMPANY , Appellant,


v.

CONTRACTORS BUILDING SUPPLY, CO. , Appellee.

____________________________________________________________________


On appeal from the 28th District Court

of Nueces County, Texas.

___________________________________________________________________


O P I N I O N

Before Justices Dorsey, Castillo, and Kennedy (1)

Opinion by Justice Castillo


Appellant Steve Wimberly rented heavy construction equipment from appellee, Contractors Building Supply, Co. ("CBS").
(2) Wimberly sued CBS to enforce a rent-to-purchase agreement after CBS sought return of the equipment because
agreed-upon payments had not been made and the time to exercise the rent-to- purchase option had lapsed. A jury
answered issues in favor of CBS and against Wimberly. The trial court rendered judgment against Wimberly based on an
oral contract. On appeal, Wimberly complains that the trial court erred in: (1) excluding the report and testimony of an
expert witness who would have testified regarding the rental and market value of the equipment; (2) denying his motion for
directed verdict; and (3) denying his motion for new trial. We affirm the judgment. 

Background



The initial cotacts

Steve Wimberly, a contractor, was interested in purchasing heavy equipment used to elevate steelworkers and materials in
connection with steel erection. In early 1997, Charles G. "Buddy" Herin, the owner of CBS contacted him about
purchasing used equipment but, for safety reasons, Wimberly hesitated. Wimberly testified, and Herin did not deny, that if
a piece of equipment was not "as good as new" or did not meet OSHA standards, CBS would repair or replace it. 
Consequently, in February 1997, on behalf of the employer to whom he was contracted, Wimberly rented two cranes from
CBS for a job at Fort Hood, Texas, and the parties agreed that CBS would apply 12% of the rental payments toward the
future purchase of rebuilt equipment. The Fort Hood equipment proved problematic and, although CBS and Wimberly did
not agree on the credit toward any future purchase, CBS eventually provided a credit in the amount of $20,200.00 toward
the account of Wimberly's company. 

The oral agreement

In May 1997, Wimberly completed an application for credit with CBS, which made no reference to the rental of equipment.
Although the credit application was standard for CBS in rental or sale transactions, the credit application process was not
finalized. Thereafter, the parties agreed on a total purchase price of $246,000 for eight pieces of equipment, with a balance
of $226,700 after applying the credit from the Fort Hood transaction. At trial, Wimberly testified that he intended to have
Mize Enterprises, his other company, purchase the equipment from CBS and then lease it to Steve Wimberly Erection
Company to minimize state sales taxes.

On June 13, 1997, pursuant to their oral agreement, CBS delivered eight pieces of construction equipment, consisting of
hydraulic scissorlifts and snorkelifts to Wimberly at two worksites. CBS delivered three of the pieces of heavy equipment
to Tokyo Electronics in Austin and five to Dell Computer in Round Rock. 

The rent-to-purchase option

On the same day, Charles Herin, the owner of CBS, generated three documents, each entitled "Rental Agreement,"
identifying in his own handwriting the equipment and the respective monthly rental amounts. The rental agreements each
consisted of three pages. After the delivery of the equipment, CBS kept the first or original page for billing purposes. CBS
also kept the second page as a file copy. CBS left the third page with the individual who received and signed for the
equipment at the respective worksites. At the time of the delivery, CBS obtained signatures acknowledging the delivery
and receipt of the equipment. The parties agree, and stipulated at trial, that the individuals who signed the documents did
not have authority to bind Wimberly. 

At trial, Herin testified that after the equipment was delivered, he directed the company's CPA to type language reflecting a
four-month rent-to-purchase option on the three original pages of the Rental Agreements. The inserted language reflects an
option for Wimberly to purchase the equipment for a period of four months, provides the purchase price for the equipment,
and states that "[r]ental will apply to purchase for four month period less interest of 12%." Herin testified that Wimberly
requested that he not add the rent-to-purchase option until after delivery of the equipment. He further testified that after
adding the rent-to-purchase language on the originals of the rental agreements, he faxed a copy of each to Wimberly. 

Wimberly testified that "on the first of October," he received copies of the front page of the rental agreements left at the job
sites and the copies Herin claimed he previously faxed. The parties stipulated that, in October 1997, Wimberly did not
receive copies of the reverse side of the documents, which contained terms and conditions of the agreement. Although
Herin testified that the rent-to-purchase provisions added after the delivery of the equipment reflected the parties' oral
agreement, Wimberly disagreed, stating that the oral agreement was to purchase and not to rent the equipment. Wimberly
denied agreeing to a four-month option to purchase the equipment and denied authorizing Herin to change the purchase
agreement after delivering the equipment. 

Wimberly's payments and financing efforts

Once the equipment was delivered, CBS sent Wimberly a separate monthly rental invoice for each of the three Rental
Agreements. The invoices reflected rental charges equal to those in the three rental agreements. Wimberly's first payment
was one month late. He explained at trial that he complained to Herin that he intended to purchase and not rent the
equipment and Herin assured him that the documents were standard for tracking equipment within CBS. In August 1997,
because of continued delinquency in payments, CBS sent notice of its intent to file liens on the Dell and Tokyo Electronics
jobs. According to Wimberly, should a lien issue, the general contractors would have withheld payments to him. In
September 1997, Wimberly paid the amount charged to "clear" the invoices and to continue receiving payments from Dell
and Tokyo Electronics. Wimberly testified he paid CBS over $80,000.00, which constituted payments toward the purchase
of the equipment and not rent. (3) CBS countered that Wimberly paid $45,552.64 toward the rental of the eight pieces of
equipment at issue and other sums were credited to other transactions involving Wimberly.

On September 25, 1997, Wimberly made the last of his payments to CBS. In November and December 1997, he tried to
obtain financing through John Deere, a company with which he had a history of financing equipment. According to
Wimberly, the company would not finance equipment manufactured prior to 1990, and through that process Wimberly
discovered that three pieces of equipment in his possession did not meet the financing criteria. Wimberly testified that
prior to the delivery of the equipment, he had asked Herin to provide equipment not older than 1990. Wimberly added that
the financing failed because Herin and he were unable to reach a "payoff number that both parties would agree to." 

The use of the equipment

Wimberly testified that he used the equipment at the worksites. He denied that he subsequently rented, without incident,
four additional pieces of equipment from CBS in San Antonio for use at Dell. In a sworn application for payment from the
general contractors, Wimberly identified his costs regarding the CBS equipment as rentals. The costs reflected the rental
rates CBS charged, except that on two sixty-foot lifts Wimberly showed a monthly cost of $3,300 each whereas the CBS
monthly charge was $3,000 each. Wimberly explained that the costs reflected rental payments to Mize Enterprises for
equipment leased to Wimberly Erection Company, and he "had to carry the CBS equipment in some manner." Wimberly
testified that he was required to assign a rental rate for cost purposes in his applications for payment. The general contractor
paid Wimberly's application for payment as submitted.

The lawsuit

After Wimberly stopped payment, CBS demanded return of the equipment and Wimberly refused. (4) On July 28, 1998, still
in possession of the equipment, Wimberly, under the assumed name of Steve Wimberly Erection Company, sued CBS,
alleging breach of contract and deceptive trade practices. Alternatively, Wimberly sought specific performance from CBS
to allow Wimberly to purchase the equipment "provided the equipment is of the age and working order and condition as
promised by CBS." CBS filed a counterclaim, seeking, in pertinent part, recovery of delinquent rental payments to cover
the period in which Wimberly had possession of the equipment. 

Discussion

On appeal, appellant complains that the trial court erred: (1) in excluding the report and testimony of an expert witness, (2)
in denying the motion for directed verdict, and (3) in denying the motion for new trial. We address these seriatim.

The Exclusion of Expert Report and Testimony

In his first issue, Wimberly complains that the trial court erroneously excluded the report and testimony of his valuation
expert, Charles Waring III. (5) Because we find no error, the first issue is overruled.

During a pre-trial conference held approximately twelve days before the jury trial of this case, the trial court considered a
document, absent from this record, entitled "Objections by Contractor's Building Supply Company to Report and Testimony
of Henry Charles Waring, III." (6) Wimberly designated Waring as an expert to testify regarding the rental and market value
of the equipment. On appeal, Wimberly maintains that the report was relevant and material and that the objection went to
the weight and not the admissibility of the evidence. He further complains that the trial court's ruling was arbitrary and its
order too broad. Regarding expert testimony, Wimberly maintains the evidence would have shown that the rental and
purchase value of the equipment was not as CBS represented. His argument on appeal regarding error in the exclusion of
the report and testimony of Waring is simply not supported in the record. 

A copy of Waring's report is part of the record on appeal. At the pre-trial hearing, Wimberly's counsel argued that the report
would not be used as evidence at trial. As reflected in the reporter's record, the trial court ruled: "Objections to the
Anthony David Kupres [sic] is denied. So they will be allowed to use the report. On the Charles [Waring][sic] is granted,
Charles report is granted". Wimberly has presented no error for us to review. 

The trial court sustained the objection to Waring's report, after hearing Wimberly's argument that the report would not be
evidence at trial. Under these facts, we find no impropriety in the trial court's disallowing Waring's report. The record does
not show a ruling adverse to Wimberly's position at the pre-trial hearing. Tex. R. App. P. 33.1(a)(2)(A). Furthermore,
Wimberly cites no authority in support of his arguments. Issues not supported by argument and authorities are deemed
waived. Fredonia State Bank v. General American Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); Trenholm v. Ratcliff,
646 S.W.2d 927, 934 (Tex. 1983); Columbia Rio Grande Regional Hosp. v. Stover; 17 S.W.3d 387, 392 (Tex. App. -
Corpus Christi 2000, no pet.). 

We find nothing in the record showing that the trial court sustained the objection to Waring's testimony. (7) The trial court's
ruling sustains the objection to the report only and is silent as to Waring's testimony. There is no ruling on CBS's written
objection regarding the expert's testimony for this court to review. The appellant has the burden to provide a sufficient
record and authority to support reversible error. Tex. R. App. P. 38.1(h); Rosenblatt v. City of Houston, 31 S.W.3d 399,
407 (Tex. App. - Corpus Christi 2000, pet denied). 

At the pre-trial hearing, Wimberly argued theories of admissibility of the expert's testimony. He did not call Waring to
testify either at the pre-trial hearing or at trial. Even if Wimberly assumed that the trial court's ruling excluding the expert
report encompassed exclusion of the testimony, in order to preserve error, he must offer the evidence and obtain a ruling on
the offer of proof. Tex. R. App. P. 33.2; Tex. R. Evid. 103(a)(2). Both the offer of the evidence and the adverse ruling of
the trial court must appear in the record. The substance of the excluded evidence must be made known to the court by an
offer as soon as practicable, but before the court's charge is read to the jury. Tex. R. Evid. 103(b). We have reviewed the
record and find that Wimberly did not offer the evidence and obtain the trial court's ruling on his offer of proof. An
appellate court cannot decide whether evidence is improperly excluded unless the evidence is included in the record for
review. McInnes v. Yamaha Motor Corp., 673 S.W.2d 185, 187 (Tex. 1984). Accordingly, we find that appellant has not
preserved error for review, and we overrule his first issue.

The Motion for Directed Verdict

In his second issue, Wimberly maintains that the trial court erred in denying his motion for directed verdict because the
alleged rental contract was unenforceable under the statute of frauds. Specifically, he claims that there was never any
written lease signed by him or any authorized agent as required by Texas Business and Commerce Code section
2A.201(a)(2). (8)

 Appellee admits there was no written lease contract signed by appellant or his authorized agent but argues that the
evidence adduced at trial demonstrated that the lease was enforceable under the exception of Texas Business and
Commerce Code section 2A.201(d)(3). (9)



We first note that no formal order overruling the motion for directed verdict is found in the record, nor does any recitation
of the same appear in the final judgment. This Court has repeatedly held that the overruling of a motion for directed verdict
will be reviewed on appeal only if recited in a formal order or in the judgment. City of Alamo v. Casas, 960 S.W.2d 240,
248 (Tex. App. - Corpus Christi 1997, pet. denied); Soto v. Southern Life & Health Ins. Co., 776 S.W.2d 752, 754 (Tex.
App. - Corpus Christi 1989, no writ). As no such order or recital exists in the instant case, we overrule appellant's second
issue.

We note that even if the issue has been preserved for appeal, a review of the evidence presented to the jury indicates that
appellant would not prevail on this point. A defendant is entitled to judgment as a matter of law only when reasonable
minds cannot differ in their decision. Jones v. Tarrant Util. Co., 638 S.W.2d 862, 865 (Tex. 1982). When the evidence
raises a material issue of fact, or when reasonable minds may differ as to the truth of the controlling facts, an instructed
verdict is not warranted, and it would be error for the trial court to instruct a verdict. Gonzales v. Hearst Corp., 930 S.W.2d
275, 278 (Tex. App.-Houston [14th Dist.] 1996, no writ). If there is any conflicting evidence of probative value, an
instructed verdict is improper and the issue must go to the jury. White v. Southwestern Bell Tel. Co., 651 S.W.2d 260, 262
(Tex. 1983). On review of a trial court's action, the evidence is therefore viewed in the light most favorable to the
non-movant and all evidence and inferences to the contrary are discarded. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex.
1978).

The evidence before the jury in the present case disclosed that Wimberly retained possession of the equipment for
approximately fifteen months. During that time, he used it in the furtherance of his business. He documented the use of
the equipment as "rental" in his application for payment from the general contractor. As to one piece of equipment, the
rental rate he listed was higher than the amount CBS charged him. The evidence showed that Wimberly claimed the
payments as rental payments for income tax purposes. The evidence also showed that Wimberly made payments
designated as rent in response to rent invoices and that Wimberly did not repudiate or challenge the lease contracts until
his use of the equipment to complete his business contracts ceased. The jury was free to, and did, disbelieve Wimberly's
explanation that the rent notations referred to rentals from Mize Enterprises and not CBS. In his brief, Wimberly even
admits that his acceptance and receipt of the equipment was "equally consistent with both parties' competing claims ... and
thus neither factual conclusion could be inferred by the fact finder." If reasonable minds can draw more than one
conclusion from the evidence, the issue must go to the jury and the trial court errs in granting a directed verdict. Collora,
574 S.W.2d at 68. In the present case, then, the evidence viewed in the light most favorable to the jury's verdict in favor of
CBS, the non-movant, constitutes some evidence that there was a lease and that the goods were received and accepted by
the lessee. As there was some evidence which tended to prove an exception to the statute of frauds, the trial court did not
err in denying the motion for directed verdict based on appellant's defense of the statute of frauds.

The Motion for New Trial

In his third issue, Wimberly contends that the trial court erred in denying his motion for new trial which was premised on
newly-discovered evidence. Wimberly urges that in response to discovery requests, CBS failed to disclose documents or
information concerning rental income or repairs and maintenance of the equipment. Post-trial, Wimberly offered an
affidavit of a temporary employee of CBS, who claimed CBS had the capacity to produce such information. CBS argues
that there was no new evidence, only testimony from a dubious witness who claimed that there might be evidence or a
means to locate such evidence.

A motion for new trial is addressed to the trial court's discretion and the court's ruling will not be disturbed on appeal
absent a showing of an abuse of discretion. Stracbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984); Balogh v. Ramos, 978
S.W.2d 696, 698 (Tex. App. - Corpus Christi 1998, pet. denied). The test for abuse of discretion is not whether, in the
opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of
whether the trial court acted without reference to any guiding rules and principles. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241- 42 (Tex. 1985).

A party who seeks a new trial on the basis of newly discovered evidence is required to satisfy the trial court that: 1)
evidence has come to his knowledge since the trial; 2) it was not owing to lack of his own diligence that the evidence was
not discovered sooner; 3) it is not cumulative; and 4) it is so material that it would probably produce a different result if a
new trial was granted. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983). The trial court should also take into
consideration the weight and the importance of the new evidence and its bearing in connection with the evidence received
at trial. Texas Employers' Ins. Ass'n v. Pillow, 268 S.W.2d 716, 721 (Tex. Civ. App. - Fort Worth 1954, writ ref'd n.r.e.).
The inquiry on appeal is "not whether, upon the evidence in the record, it apparently might have been proper to grant the
application in the particular case, but whether the refusal of it has involved the violation of a clear legal right or a manifest
abuse of judicial discretion." Jackson, 660 S.W.2d at 809(citing San Antonio Gas Co. v. Singleton, 24 Tex. Civ. App. 341,
59 S.W. 920, 922 (Tex. Civ. App. 1900, writ ref'd)). A party has to have "really discovered new evidence of a conclusive
tendency" for there to be error in the denial of a motion for new trial. Jackson, 660 S.W.2d at 810 (emphasis in original).

Our review of the record of the evidence presented at the hearing on the motion for new trial does not indicate that the trial
court abused its discretion. Wimberly failed to produce any actual new evidence and the judgment regarding the credibility
of Wimberly's witnesses as to CBS's ability to produce new evidence was well within the sound discretion of the trial court. 
Moreover, the potential new evidence was not of such a conclusive tendency as to have probably produced a different result
if a new trial had been granted. We find no abuse of discretion and overrule appellant's third issue. 

Conclusion

Having overruled all three of appellant's issues, we affirm the decision of the trial court. 

ERRLINDA CASTILLO 

Justice



Do not publish.

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 12th day of July, 2001.

1. Senior Justice Noah O. Kennedy assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998). 

2. Wimberly owned Steve Wimberly Erection Company and Mize Enterprises. Steve Wimberly filed the underlying 
lawsuit under the assumed name of Wimberly Erection Company. Mize Enterprises was not a party.

3. Wimberly testified that the notation of "rent" on his checks to CBS memorialized the relationship between Wimberly
Erection and Mize Enterprises, where the latter "owns [and] rents to Wimberly."

4. He explained at trial:


Well, we invested a lot of money in the equipment, and we felt like that we earned the equity in it, and if we returned it, I
don't think we would have been successful at getting any of our money back.

Wimberly kept the equipment until September 1998.

5. The document is not in the record before us. The reporter's record reflects the trial court's reading its title and the clerk's
record identifies the document as filed. At the pre-trial hearing, the parties agreed that the objections were not pursuant to a
Robinson/Daubert challenge. See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993); E.I. DuPont de Nemours &
Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995).

6. The trial court simultaneously considered a document entitled "Objections by Contractor's Building Supply to Report
and Testimony of Anthony David Kupras," which is also not before us. Wimberly urges that Waring's report was based
upon the report of Kupras.

7. In his brief, Wimberly refers the court to page 245 of the clerk's record. The relevant notation merely states that
"M[otion] to strike Charles' report granted." Wimberly apparently cites language from CBS's written objections, a
document not before us, to support his argument that the trial court's ruling excluded Waring's testimony. We decline to
find that the trial court ruled implicitly. Tex. R. App. P. 33.1(a)(2)(A). 

8. Texas Business and Commerce code section 2A.201(a)(2) reads:

(a) A lease contract is not enforceable by way of action or defense unless:

...(2) there is a writing, signed by the party against whom enforcement is sought

or by that party's authorized agent, sufficient to indicate that a lease contract

has been made between the parties and to describe the goods leased and

the lease term.



Tex. Bus. & Com. Code §2A.201(a)(2)(Vernon 1994).

9. Texas Business and Commerce code section §2A.201(d)(3) reads:



(d) A lease that does not satisfy the requirements of Subsection (a), but which is valid in other respects, is enforceable:



...(3) with respect to goods that have been received and accepted by the lessee. 



 Tex. Bus. & Com. Code §2A.201(d)(3)(Vernon 1994).