**OLYMPIA MARBLE & GRANITE,**
Appellant,

v.

**Christopher MAYES and Cynthia Mayes, Appellees.**

**No. 01–98–00845–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

May 4, 2000.

Rehearing Overruled May 25, 2000.

W. Joel Bryant, Houston, for Appellant.

Keith M. Fletcher, Houston, John C. Grazier, Seabrook, for Appellees.

Panel consists of Justices O'CONNOR, WILSON, and ANDELL.

## OPINION ON REHEARING

MICHOL O'CONNOR, Justice.

This is a limited appeal from a default judgment against Olympia Marble & Granite (Olympia), the defendant below and appellant here, in favor of Christopher Mayes and Cynthia Mayes (the Mayes), the plaintiffs below and appellees here. In an opinion dated January 13, 2000, we dismissed the appeal for want of jurisdiction. Olympia filed a motion for rehearing. We grant the motion, withdraw our opinion of January 13, 2000, and issue this opinion in its place.

## Background

In June 1994, the Mayes sued Olympia for personal injuries Christopher suffered in 1992 while lifting marble tables. When service on Olympia was unsuccessful, the Mayes filed a motion for substituted service supported by an affidavit stating:

> On July, 1994, I spoke with Mr. Raffi B. Yegyayan, owner of Olympus Marble and Granite, and he advised that he had purchased the business telephone number of Olympia Marble and Granite from Mr. Dimitrios Bissias, and that Mr. Bissias had returned to Greece to live.
>
> On August 15, 1994, I spoke with Mr. Angelo Dimitrios Bissias, who resides at 427 Bayou Cove, Houston, Texas, in an attempt to determine if his father, Mr. Dimitrios George Bissias had in fact returned to Greece to live. Mr. Angelo Bissias advised that his father, Dimitrios George Bissias was presently living in Athens, Greece, and had been living there for approximately one (1) year. Mr. Angelo Bissias indicated that Dimitrios Bissias would be returning to the United States over the Christmas holidays to visit, and he would be in contact with him during that period of time.

The trial court ordered substituted service on Olympia by serving its owner Dimitrios Bissias, by serving anyone over 16 years of age residing at 427 Bayou Cove. The constable filed his return, stating service was executed on February 3, 1995 at 427 Bayou Cove on "Dimitrios Bissias per Rule 106 by delivering to w/m over 16 years of age at address."

Olympia did not answer or otherwise appear. Default judgment against Olympia was granted and the judge signed a judgment on November 7, 1997 (the November Judgment). The November Judgment awarded compensatory damages and prejudgment interest, but did not include an amount for prejudgment interest. Instead, the trial court drew a line through the space in which a prejudgment interest amount would have been inserted, leaving the words awarding prejudgment interest in the judgment. The judge added his initials after the line drawn through the blank. On January 29, 1998, the trial court signed what purported to be an amended final judgment (the January Judgment), which was identical to the November Judgment except that it included an amount for prejudgment interest.

On July 29, 1998, Olympia filed a restricted appeal under Texas Rule of Appellate Procedure 25.1(d)(7). On appeal, Olympia challenges the default judgment on the grounds that service was invalid because (a) the affidavit supporting the motion for substituted service was deficient, (b) proof of service did not comply with the trial court's order, and (c) service of process was not reasonably effective to give Olympia notice of the suit.

## Timeliness of Olympia's Appeal

In a single cross-point, the Mayes assert this Court does not have jurisdiction because Olympia's restricted appeal was filed more than six months after the signing of the November Judgment. *See* Tex.R.App. P. 26.1(c) (requiring restricted appeals to be filed within six months after signing of judgment). Because the Mayes's cross-point affects this Court's jurisdiction, we address it first.

A final judgment is one that disposes of all parties and issues in the case. *Schlipf v. Exxon Corp.*, 644 S.W.2d 453, 454 (Tex.1982). A judgment must be sufficiently definite and certain to define and protect the parties' rights, or it should provide a definite means of ascertaining such rights so that ministerial officers can carry the judgment into execution without ascertaining facts not stated in the judgment. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). If the amount awarded by the judgment cannot be determined, the judgment is interlocutory. *H.E. Butt Grocery Co. v. Bay*, 808 S.W.2d 678, 680 (Tex. App.—Corpus Christi 1991, writ denied).

Statutorily · authorized interest may be predicated on a prayer for general relief. *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex.1987). Therefore, even if a personal injury plaintiff does not specifically plead prejudgment interest, if the plaintiff's claim falls within the scope of a statute authorizing prejudgment interest, then the plaintiff is entitled to prejudgment interest based on a claim for general relief alone. *Id.* Here, the Mayes specifically pled for prejudgment interest, which is authorized by statute. *See* Tex.Rev.Civ. Stat. article 5069–1.05 § 6(a)[1] ("Judgments in wrongful death, personal injury and property damage cases *must include* prejudgment interest . . . ." (emphasis added)). Accordingly, the Mayes were entitled to prejudgment interest as a matter of law.

*November Judgment*

Olympia contends the November Judgment was interlocutory because it did not state a *specific amount* for prejudgment interest; therefore, a ministerial officer could not determine the amount of prejudgment interest to issue a writ of execution.

When the rate and means of calculating interest is a matter of law, it need not be stated in the judgment. *Ortiz v. Avante Villa*, 926 S.W.2d 608, 611 (Tex. App.—Corpus Christi 1996, writ denied) (default judgment in wrongful death case, which did not specify how prejudgment interest was to be calculated, was a final judgment); *see also H.E. Butt Grocery*, 808 S.W.2d at 680. The prejudgment interest rate is set as a matter of law. *See*

Tex.Rev.Civ. Stat. art. 5069–1.05 § 6(g) (prejudgment interest rate equal to postjudgment interest rate at time of judgment); Tex.Rev.Civ. Stat. art. 5069–1.05 § 2 (providing method by which interest rate is determined). Olympia argues that Article 5069–1.05, Section 6(a) provides for alternate dates on which prejudgment interest is to begin accruing; therefore, the means of calculating the amount of prejudgment interest is a mere ministerial act. Section 6(a) provides as follows:

> Judgments in wrongful death, personal injury, and property damage cases must include prejudgment interest. Except as provided by Subsections (b), (c), and (d) of this section, prejudgment interest accrues on the amount of the judgment during the period beginning on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first, and ending on the day preceding the date judgment is rendered.

Although the parties do not refer us to any cases addressing this narrow issue, we find guidance in other cases that have addressed when missing facts render a judgment interlocutory.

In *Zamarripa v. Sifuentes*, 929 S.W.2d 655, 657 (Tex.App.—San Antonio 1996, no writ), a default judgment was silent on the issue of prejudgment interest and the plaintiffs (appellees) argued the omission did not render the judgment interlocutory because prejudgment interest was mandatory in personal injury cases. The plaintiffs contended prejudgment interest was

---

1. Effective September 1, 1997, article 5069–1.05 was codified in Chapter 304 of the Texas Finance Code. *See* Act of May 24,1997, 75th Leg., R.S., ch. 1008, § 1, 1997 Tex. Sess. Law Serv. 3435. No substantive change in law was intended by the codification. Tex. Fin. Code § 1.001(a); Act of May 24, 1997, 75th Leg., R.S., ch. 1008, § 7 & preamble, 1997 Tex. Sess. Law Serv. 3091, 3603. The prejudgment language in the Texas Finance Code was then superseded by the later enactment of similar prejudgment interest language in

the Texas Credit Title, Act of June 2, 1997, 75th Leg., R.S., ch. 1396, § 1, 1997 Tex. Sess. Law Serv. 5212–13. In any event, the 1997 codification applies to suits filed after the effective date of the codification, September 1, 1997.

Because the underlying lawsuit was filed in 1994, pre-codification Article 5069–1.05, sections 1 through 6, apply to the November Judgment. As a result, this opinion will refer to these sections rather than to the Texas Finance Code or the Texas Credit Title.

recoverable, even if not specifically awarded in the judgment, because the calculation of prejudgment interest was purely a ministerial function. Although the court of appeals agreed with this argument as a general concept, it noted that Article 5069–1.05 provided for a tolling period when a settlement offer was pending. 929 S.W.2d at 657. The tolling provisions of section 6(b) and (c) require the court to compare the amount of the settlement offer to the amount of the judgment. The provisions also require exact information on the period of time the settlement offer was pending. The record in *Zamarripa* indicated that written settlement offers were exchanged by the parties on more than one occasion before entry of the default judgment. Because the pending dates and amounts of such offers were not clear as part of the record, it was no mere ministerial act to calculate prejudgment interest. *Id.* Taking these provisions into consideration, the court of appeals was unable to ascertain from the judgment when prejudgment interest would begin to accrue. Because the calculation of prejudgment interest involved fact issues that remained unresolved by the default judgment, the judgment was not final. *Id.* at 657–58.

In *H.E. Butt Grocery,* 808 S.W.2d at 680, the default judgment awarded prejudgment interest, but did not specify the rate or date of accrual. The defendant (appellant) asserted the judgment was not final. The court of appeals noted there were three possible authorities under which prejudgment interest could be ordered by the trial court—two statutory and one at common law. *Id.* (citing to Article 5069–1.03 & 5069–1.05 and *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), respectively). Because the suit was not one for personal injury, wrongful death, or property damage, Article 5069–1.05 did not apply. Therefore, the question was which of the two remaining authorities (Article 5069–

1.03 or *Cavnar*) would apply. *Id.* Because the appellate court could not determine from the record which of the two authorities the trial court applied, the amount of prejudgment interest was not capable of definite ascertainment from its own terms. *Id.* at 681. Therefore, the default judgment was not final. *Id.*

In *Fuller–Austin Insulation Co. v. Bilder,* 960 S.W.2d 914, 923 (Tex.App.—Beaumont 1998, pet. dism'd), the issue on appeal was not the finality of the judgment, but whether the trial court erred by not applying a settlement credit before calculating prejudgment interest on the jury's verdict, and by calculating prejudgment interest from the date the lawsuit was filed. The court of appeals noted that in personal injury and wrongful death cases involving an asbestos-related injury or disease or other latent injury or disease, prejudgment interest accrues from a date six months after the date the defendant received notice of the claim or the lawsuit was filed, whichever occurred first. Because the record did not indicate the plaintiffs sent defendant a notice of claim before filing suit, the appellate court concluded prejudgment interest should have been calculated starting from the date six months after suit was filed. *Id.*

We construe *Zamarripa, H.E. Butt Grocery,* and *Fuller–Austin* as standing for the proposition that if the record reveals facts that call into question the date on which prejudgment interest should accrue,[2] then the calculation of prejudgment interest is not a simple ministerial act. We construe *Zamarripa* and *H.E. Butt* as standing for the proposition that, in such a case, the judgment is not final. On the other hand, if there are no facts in the record to call into question the date on which prejudgment interest should accrue, then the calculation of prejudgment interest is a mere ministerial act.

---

2. For example, as in *Zamarripa,* the record revealed the parties engaged in settlement negotiations, thus potentially triggering the tolling provisions of Article 5069–1.05 § 6(b)-(f), but the pending dates and amounts of the offers were not clear as part of the record.

■ Here, the record indicates there are other facts necessary to the calculation of prejudgment interest. The record does not indicate the Mayes sent Olympia written notice of their claims. The date of the Mayes' petitions are in the record. Therefore, prejudgment interest should be calculated from the date the Mayes filed their petitions against Olympia. However, the record indicates there are periods in which entry of the judgment was delayed.

On June 8, 1994, Christopher filed suit against Olympia in a third amended petition. On July 12, 1994, Cynthia filed suit against Olympia in a fourth amended petition. In July 1994, the Mayes learned that Bissias had returned to Greece.[3] On December 5, 1994, the Mayes filed a motion for substituted service. On February 9, 1995, the return of citation was filed with the clerk. Assuming service was valid, the Mayes could have moved for default judgment as early as February 24, 1995. *See* Tex.R. Civ. P. 107. Yet, Christopher waited until August 7, 1995 to file a motion for interlocutory default judgment, and Cynthia waited until October 26, 1995. The court rendered interlocutory default judgment for Christopher on August 31, 1995 and for Cynthia on November 8, 1995. Neither plaintiff took any action in the lawsuit for two years until after it was dismissed for want of prosecution on October 29, 1997. On November 7, 1997, the lawsuit was reinstated, and the trial court signed the November Judgment.

■ Article 5069–1.05, section 6(d) provides that "the court in its discretion may order that prejudgment interest does or does not accrue during periods of delay in the trial...." Tex.Rev.Civ. Stat. article 5069–1.05 § 6(d). This language allows for two alternatives: the court may order that prejudgment interest *does* accrue during periods of delay, or the court may order that prejudgment interest *does not* accrue during periods of delay.

The trial court has the discretion to toll the accrual period. Tex.Rev.Civ. Stat. article 5069–1.05 § 6(d) ("the court in its discretion may order ... "); *see C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 326 (Tex.1994) (trial courts have discretion to toll the accrual of prejudgment interest in response to a plaintiff's delay); *see also City of Alamo v. Casas*, 960 S.W.2d 240, 260 (Tex.App.—Corpus Christi 1997, writ denied). In *Casas*, the case had been twice dismissed for want of prosecution as a result of the plaintiff's inaction. The City argued that the trial court abused its discretion by refusing to factor into its calculation of prejudgment interest those periods of delay caused by the plaintiffs. The appellate court disagreed, noting that the "statute does not mandate such offsetting, which is entirely within the discretion of the trial court." *Id.* at 260. The appellate court refused to substitute its opinion for that of the trial court. *Id.*

■ Here, the November Judgment does not indicate whether the trial court determined there was delay, and if there was delay, whether interest should accrue during the period(s) of delay. Because there are facts in the record that call into question the date on which prejudgment interest should accrue and whether any period of delay tolled the accrual of prejudgment interest, it would not be a mere ministerial act to calculate prejudgment interest. Therefore, the November Judgment did not dispose of all issues; it left open the amount of prejudgment interest to be awarded. Accordingly, the November Judgment was interlocutory. When the trial court calculated the prejudgment interest in the January Judgment, it disposed of all issues. Thus, the January Judgment was the final judgment and Olympia's appeal is timely.

We overrule the Mayes' cross-issue.

---

3. When the Mayes originally filed suit, they sued several defendants, other than Olympia. The Mayes later nonsuited these other defendants.

**444**

## Affidavit Deficiencies

In issue one, Olympia argues that service was invalid because the affidavit supporting the Mayes's motion for substituted service did not meet the requirements of Texas Rule of Civil Procedure 106(b). Rule 106(b) requires an affidavit in support of a motion for substituted service to state the following: (1) the location of the defendant's usual place of business or usual place of abode or other place where the defendant can probably be found and (2) the facts showing that service has been attempted under either subsections (a)(1) or (a)(2) of Rule 106 at the location named in the affidavit, but service has not been successful.

Olympia is correct; the Mayes's affidavit did not meet either requirement. The affiant states the following: (1) on June 20, 1994, she was "given the assignment to locate" Dimitrios Bissias; (2) on July 7, 1994, the owner of Olympia told her he purchased Olympia's telephone number from Bissias and Bissias had returned to Greece to live; and (3) on August 15, 1994, Bissias's son told her Bissias had been living in Greece for approximately one year, but he would return to the United States for a visit during the Christmas holidays and he would be in contact with Bissias at that time.

■ When a default judgment is attacked directly, substituted service is not authorized under Rule 106(b) without an affidavit that meets the requirements of the rule demonstrating the necessity for other than personal service. *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990); *see also Barker CATV Const., Inc. v. Ampro, Inc.*, 989 S.W.2d 789, 792 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). There is no presumption in favor of valid issuance, service, and return of citation in the face of a writ of error attack on a default judgment. *Primate Const., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex.1994); *Wilson*, 800 S.W.2d at 836. Strict compliance with the Rules of Civil Procedure relating to the issuance, service, and return of citation must be shown or the attempted service of process will be rendered invalid and of no effect. *Id*; *see also Medford v. Salter*, 747 S.W.2d 519, 520 (Tex.App.—Corpus Christi 1988, no writ) (affidavit in support of motion for substituted service of citation did not show specific facts that service had been attempted and was deficient).

■ Here, the affidavit does not indicate Olympia's usual place of business or Bissias's usual place of abode. The affidavit does not specifically state whether or how the Mayes attempted service under Rule 106(a), but that they were unsuccessful. Because the affidavit did not comply with the requirements of Rule 106(b), the Mayes's attempted service of process was invalid.

We sustain issue one.

## Service of Process

In issue three, Olympia argues service was invalid because it did not satisfy the requirements of Rule 106(b), in that service was not made (1) at Bissias's place of abode, place of business, or other place where he could probably be found, or (2) in any other manner reasonably effective to give him notice of the suit. The trial court ordered service on Olympia's owner, Bissias, "by serving anyone over the age of sixteen residing at 427 Bayou Cove, Houston."

The Mayes rely on three cases to support their contention that service on Bissias's son at 427 Bayou Cove was sufficient to give Bissias notice of the suit. *See Walker v. Brodhead*, 828 S.W.2d 278, 281 (Tex.App.—Austin 1992, writ denied) (upheld substituted service when citation was left with someone over 16 years of age at a ranch defendant had designated as his homestead); *Magan v. Hughes Television Network, Inc.*, 727 S.W.2d 104, 105 (Tex. App.—San Antonio 1987, no writ) (upheld substituted service at an address where defendant's children lived and it was shown that other communications reached

him by delivery at the same place); *Alvarez v. Alvarez*, 476 S.W.2d 353, 359 (Tex. Civ.App.—Corpus Christi 1972, no writ) (record showed it was impractical to secure personal service on husband after he moved to Mexico City; trial court upheld substituted service by leaving petition at his place of business because this was reasonably effective to give him notice of divorce action). Although we do not disagree with the holdings in *Walker, Magan,* and *Alvarez,* the facts here are distinguishable from the facts in those cases.

Here, it is clear from the affidavit that 427 Bayou Cove was not Bissias's usual place of business or abode. Therefore, for service at 427 Bayou Cove to be valid, this address had to be another place where he could be found or service at that address had to be reasonably calculated to give him notice of the suit. The affidavit does not indicate Bissias would return to 427 Bayou Cove over the Christmas holidays; it merely states he would return "to the United States." Even if Bissias had returned to 427 Bayou Cove over the Christmas holidays, the order for substituted service was signed on January 3, 1995, *after* the holidays had passed. There is nothing in the affidavit to indicate whether Bissias would be at 427 Bayou Cove after the holidays. Therefore, service at 427 Bayou Cove was not reasonably calculated to give Bissias notice of the suit.

We sustain issue three. Because we sustain issues one and three, we do not address issue two.

We reverse the trial court's judgment and remand for further proceedings.