Affirmed as Modified and Memorandum Opinion filed May 22, 2007








Affirmed as
Modified and Memorandum
Opinion filed May 22, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01232-CV

____________

 

LYCETT RITCHIE, Appellant

 

V.

 

DR. NESHAT YAZDI, APPLE DENTISTS, PLLC, AND DR.
FATEMAH BIJAN Appellees

 



 

On Appeal from the 281st
District Court

Harris County, Texas

Trial Court Cause No. 03-48699

 



 

M E M O R A N D U M   O P I N I O N








Appellant Lycett Ritchie sued appellees Dr. Neshat Yazdi,
Apple Dentists, PLLC, and Dr. Fatemah Bijan asserting numerous causes of action
arising out of the making of a denture.  Prior to trial, the trial court
granted partial summary judgment to Apple Dentists[1]
and Dr. Yazdi on Ritchie=s Deceptive Trade Practices Act (ADTPA@) claim. 
Following a trial, the jury found that both Dr. Yazdi and Ritchie were
negligent and apportioned fifty percent negligence to each. We reform the
judgment to award pre- and post-judgment interest and affirm the judgment as
modified.

I. Background

Ritchie was fifty-three years old at the time of trial and
has worn dentures since she was fifteen years old.  In October 2002, Ritchie
met with Dr. Yazdi with Apple Dentists to consult regarding dental work she
needed.  Dr. Yazdi and Ritchie agreed on a treatment plan including a deep or
gross scale cleaning and a new upper denture.  The total cost of all services
was $1,290.  The failure to provide a properly fitting upper denture and the
alleged failure to perform the deep cleaning form the basis of this lawsuit.

Dr. Yazdi attended to Ritchie four or five times before
delivering the denture.  Ritchie testified that problems with her treatment
began during the first visit when Dr. Yazdi left the material used to make the
denture mold in Ritchie=s mouth too long, causing difficulty
removing and possible damage to the mold.  Dr. Yazdi denied leaving the mold
material in too long or having any problems removing it.  During the next two
to three visits, Dr. Yazdi worked with Ritchie on various procedures designed
to aid construction of the final denture.  Ritchie claimed she complained
repeatedly that the Awax try in,@ which is used to
help mold the final denture, was uncomfortable and caused irritation, sores,
and gagging.  Ritchie testified that Dr. Yazdi was extremely hostile toward her
regarding her complaints and eventually began screaming at her that A[t]his is how it=s going to be. 
You have to get used to this with the fit.  You have to get used to this.@








Dr. Yazdi delivered the final denture December 24, 2002. 
Ritchie testified that she complained to Dr. Yazdi that the denture was
uncomfortable, causing irritation and an overbite, and Dr. Yazdi was again
hostile toward her complaints and told her she just needed to get used to it. 
Dr. Yazdi admitted that Ritchie complained at this visit and noted in her chart
that Ritchie was rude.  Ritchie did, however, acknowledge that Dr. Yazdi made
some adjustments at this point and told her more would be needed in the future,
although the adjustments still not did not alleviate Ritchie=s discomfort. 
Over the next month, the denture gave her a Abuck teeth@ appearance,
caused pain and discomfort, and interfered with her ability to chew and thus
follow her physician=s recommended diet. 

On January 28, 2003, Ritchie had a follow up appointment
with Dr. Yazdi.  Drs. Yazdi and Bijan met with Ritchie to discuss her
concerns.  As before, the evidence conflicted substantially as to what occurred
during this appointment.  Ritchie testified that both doctors were hostile
toward her, especially Dr. Yazdi.  Both doctors, as well as an assistant,
testified that Ritchie was rude and refused any and all adjustments. 
Additionally, Dr. Yazdi testified that she offered to remake the denture should
that be necessary, which Ritchie disputes.  Ritchie also disputes that she
refused adjustments, though her testimony indicated that she did not want Dr.
Yazdi to perform any additional work on her and admitted that she told Dr.
Yazdi that she was very busy and did not have time to continue coming for
adjustments.  Ritchie left the office and never returned for any adjustments. 
Ritchie also testified that she requested a refund at some point, which she
never received.

On March 1, 2003, Dr. Yazdi telephoned Ritchie to provide a
detailed list of charges for services provided.  The testimony regarding this
phone call and what was offered was somewhat different between Dr. Yazdi and
Ritchie.  Both agreed that Dr. Yazdi offered to do adjustments, which Ritchie
later rejected, but Dr. Yazdi testified that she offered again to make a new
denture, which Ritchie disputes.

On April 15, 2003, Ritchie met with Dr. Patricia Serna,
another dentist, who eventually made a new upper denture for Ritchie.  Ritchie
returned for subsequent adjustments and was ultimately very happy with the
denture.  Dr. Serna stated that Ritchie was cooperative and pleasant.








At trial, each side presented expert testimony on the issue
of negligence in the making and fitting of the denture as well as Ritchie=s reasonableness
in refusing adjustments or a new denture.  Ritchie presented testimony from Dr.
Gene Stevenson, an expert on prosthodonics who taught Dr. Yazdi in dental
school.  Dr. Stevenson explained that there are four measurements of whether
dentures meet the standard of care: (1) aesthetics, (2) comfort, (3) bite, and
(4) preservation of oral health.  According to Dr. Stevenson, while the denture
could have been adjusted to make it more comfortable and to improve
functionality, it could not be adjusted aesthetically or to have an adequate
bite.  He testified he was embarrassed to see one of his students present a
denture that failed the standard of care in two respects.  Dr. Patrick Flinn
testified on Dr. Yazdi=s behalf.  Dr. Flinn testified that Dr.
Yazdi met the standard of care because the denture could have been adjusted to
be workable.  While he agreed the denture left something to be desired, he also
testified that all dentures can be adjusted.  Finally, he testified that it was
unreasonable to refuse adjustments and the making of a new denture.

The jury found both Dr. Yazdi and Ritchie negligent,
apportioning fifty percent negligence to each.  The jury awarded a total of
$2,000 in past physical pain and mental anguish and $790 in past medical
expenses.  The trial court awarded half of the damages to RitchieCin line with the
negligence findingCbut did not include pre- or post-judgment
interest.  Ritchie now appeals and raises the following seven issues: (1) the
trial court erred in failing to award pre-judgment interest, (2) the trial
court erred in failing to award post-judgment interest, (3) there is no
evidence to support the jury=s finding of contributory negligence, (4)
there is insufficient evidence supporting the jury=s finding of
contributory negligence, (5) the trial court abused its discretion in refusing
to award appellant costs, (6) the trial court erred in granting summary
judgment on appellant=s DTPA claim, and (7) the trial court
should have awarded appellant her expert witness fees as costs.








II. Analysis

A.      Interest

In Ritchie=s first two
issues, she claims the trial court erred in failing to award pre- and
post-judgment interest.  Appellees concede that Ritchie should have been
awarded both 

pre-
and post-judgment interest.  See Olympia Marble & Granite v. Mayes,
17 S.W.3d 437, 441 (Tex. App.CHouston [1st Dist.] 2000, no pet.). 
Additionally, appellees have offered an amount for pre-judgment interest and a
manner for calculating post-judgment interest.  According to appellees, there
is no dispute between the parties as to these amounts or the method of
calculating the interest.  Therefore, we will reform the judgment pursuant to
our authority under Texas Rule of Appellate Procedure 43.2(b) to reflect
$170.52 in pre-judgment interest and post-judgment interest in the amount of
six percent per year from the date of the final judgment, September 12, 2005,
to the date that such judgment is paid, excluding only the extension of time to
file Ritchie=s brief granted on appeal.  See Tex. Fin. Code Ann. ' 304.005(b)
(Vernon Supp. 2006B2007) (governing the exclusion of time
granted for an extension of time to file a brief in the calculation of
post-judgment interest).

B.      Sufficiency
of the  Evidence 

Ritchie raises two issues regarding the sufficiency of the
evidence to support the jury=s finding on contributory negligence.  In
her first issue regarding the evidence, she contends there is no evidence to
support the jury=s finding.  In her second issue regarding
the evidence, she argues the trial court should have granted her motion for new
trial because the evidence is factually insufficient to support the jury=s finding. 

1.       Legal
Sufficiency








In
determining whether there the evidence is legally sufficient evidence, we
consider the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference that would support it.  See City of
Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We must credit
favorable evidence if a reasonable factfinder could and disregard contrary
evidence unless a reasonable factfinder could not disregard it.  See id. at
827.  We must determine whether the evidence at trial would enable a reasonable
and fair‑minded person to find the facts at issue.  See id.  The
factfinder is the sole judge of the credibility of the witnesses and the weight
to give their testimony.  See id. at 819.  Evidence is conclusive only
if reasonable people could not differ in their conclusions.  See id. at
816.  We conduct our review in light of the jury charge.  See Osterberg v.
Peca,
12 S.W.3d 31, 55 (Tex. 2000).  

The jury charge defined negligence with respect to Ritchie=s conduct as the Afailure to do that
which a person of ordinary prudence would have done under the same or similar
circumstances or doing that which a person of ordinary prudence would not have
done under the same or similar circumstances.@  Therefore, the
question we must answer is whether sufficient evidence supports the jury=s finding that
Ritchie did not act as an ordinary prudent person would have when she refused
to have the denture adjusted.

All of the experts agreed that newly-made dentures can be
adjusted.  Specific to this denture, the experts agreed, at minimum, that it
could have been adjusted for comfort and basic functionality.  Moreover, the
experts agreed that virtually every immediate denture requires adjustments, to
take place over the course of several visits.  These visits are required
because the patient=s mouth will change during the healing
process following an extraction.  The evidence showed that it would be wholly
unreasonable for a patient to refuse adjustments pursuant to a doctor=s instructions. 
Ritchie allowed Dr. Yazdi to make some adjustments on the date of delivery, but
none thereafter.  








The evidence indicated that, regardless of whether the
denture had been well-manufactured in the first instance, some adjustments
would have been necessary.  Even if these adjustments could not make the
denture compliant with the standard of care in all four areasCaesthetics, bite,
comfort, and oral healthCthey could have addressed bite and
comfort.  Thus, there was legally sufficient evidence to support a finding that
Ritchie was unreasonable and negligent in refusing to allow anyone to make
adjustments to the denture.  Furthermore, there was testimony from Dr. Yazdi,
which the jury was entitled to believe, that she offered to make Ritchie a new
denture and Ritchie refused. This evidence also supports the jury=s finding that
Ritchie contributed to her own harm.[2] 
Accordingly, we overrule this issue.

2.       Factual
Sufficiency

Ritchie next argues the evidence is factually insufficient
to support the jury=s contributory negligence finding.  In
reviewing a factual sufficiency issue, we consider all the evidence supporting
and contradicting the finding.  Plas‑Tex, Inc. v. U.S. Steel Corp.,
772 S.W.2d 442, 445 (Tex. 1989).  We set aside the verdict only if the finding
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust or if the result shocks the conscience or clearly indicates
bias.  See Pool v. Ford Motor Corp., 715 S.W.2d 629, 735 (Tex.
1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  We must conduct
our analysis in light of the charge as submitted to the jury.  See Osterberg,
12 S.W.3d at 55.








As discussed above, the jury was asked to evaluate whether
Ritchie failed to do what Aa person of ordinary prudence would have
done under the same or similar circumstances@ or if she did
what Aa person of ordinary
prudence would not have done under the same or similar circumstances.@  Here, Ritchie=s own evidence
corroborated Dr. Yazdi=s general premise that Ritchie was
unreasonable in refusing adjustments.  Dr. Stevenson testified that the denture
could have been made more comfortable, stable, and functional with
adjustments.  Although he testifiedCand the jury
seemingly acceptedCthat the denture would have had to be
remade regardless of any adjustments, his testimony supported Dr. Yazdi=s theory that
Ritchie was unreasonable.  Drs. Yazdi and Flinn testified that the denture
could have been adjusted in every wayCa premise the jury
did not accept.  Regardless of the fact that the jury did not completely accept
their testimony that the denture could be made perfect, the jury could use that
testimony to support a finding that Ritchie was negligent when she refused to
make the denture comfortable and functional while awaiting a new denture.
Although Ritchie argues that Dr. Yazdi=s testimony and
her records were self-serving and unreliable, it was within the province of the
jury to assess the credibility of the  witnesses.  City of Keller, 168
S.W.3d at 819.

We hold the evidence is factually sufficient to support the
jury=s finding, and we
overrule this issue.

C.      Cost
Allocation

In her next issue, Ritchie contends the trial court abused
its discretion when it ordered that each party would bear its own costs. 
Neither party seems to dispute Ritchie=s status as the
prevailing party for purposes of Texas Rule of Civil Procedure 131.  However,
the parties dispute whether good cause existed for the trial court to apportion
the costs as it did pursuant to Texas Rule of Civil Procedure 141, which states
A[t]he court may,
for good cause, to be stated on the record, adjudge the costs otherwise than as
provided by law or these rules.@

Regarding costs, the trial court stated in its final
judgment: 

Because every cause of action, with
the exception of negligence against Dr.Yazdi, was either non-suited or a
directed verdict was granted, the Court finds that each party should bear its
own costs in this matter.

Rule 141 requires both good cause for deviation from the
rules and that the trial court=s justification be stated on the record.  Furr=s Supermarkets,
Inc. v. Bethune, 53 S.W.3d 375, 376 (Tex. 2001).  Good cause  is an
elusive concept and varies from case to case.  Id. at 376B77.  Typically,
though, good cause means that the prevailing party unnecessarily prolonged the
proceedings, unreasonably increased costs, or otherwise did something that
should be penalized.  Id. at 377.  We review the trial court=s use of Rule 141
under an abuse of discretion standard.  See id. at 376.  








Here, the trial court determined that each party should
bear its own costs because Ritchie asserted numerous claims against three
parties and yet only one claim against one party was presented to the jury. 
Implicit in the trial court=s statement of good cause on the record is
that Ritchie filed numerous claims against all three defendants below, of which
only one had a basis in law or fact, and thus Ritchie should bear her own
costs.  The trial court=s basis for good cause was not an abuse of
discretion, and we overrule Ritchie=s issues related
to costs, including her argument that her expert fees should be taxed as costs
against appellees.[3]

D.      DTPA Claim

In her final issue, Ritchie alleges the trial court erred
when it granted appellees= motion for summary judgment on her DTPA
claims.  According to Ritchie, Dr. Yazdi is liable under the DTPA because she
intentionally misrepresented how the denture should fit.  Therefore, Ritchie
argues, the DTPA claim can be maintained under the reasoning of Sorokolit v.
Rhodes, 889 S.W.2d 239, 242B43 (Tex. 1994) (holding that a DTPA suit
against a physician is not precluded for a knowing misrepresentation or breach
of express warranty in cases in which a physician warrants a particular
result).  We disagree.

Claims for physician negligence cannot be maintained under
the DTPA.  See id. at 242.  However, if the claim rests not on the
alleged breach of the standard of care, a DTPA claim may lie against a
physician.  See id.  Merely recasting a claim as something other than
negligence will not allow the claim to survive as a DTPA claim.  See id. 
Yet, that is precisely what Ritchie attempted with her pleadings.








Ritchie relies heavily on the Sorokolit case for the
proposition that her pleadings were not attempting to recast her claims.  Yet
the Walden case is on point and controlling.  Walden v. Jeffery,
907 S.W.2d 446 (Tex. 1995).  Notably, Walden was issued a little more
than a year after Sorokolit and distinguishes the facts of the two
cases.  Id. at 447B48.  In Walden, the Texas Supreme
Court held that Jeffery was simply recasting a medical negligence case
involving dentures.  Id. at 447B48.  The supreme
court reasoned that the case was not a DTPA case because Jeffery=s pleadings
established, as a matter of law, that the Aproviding of
dentures was an inseparable part of Walden=s rendition of
medical services.@  Id. at 448.  The same is true
here.  All of Ritchie=s claims are inseparable from Dr. Yazdi=s rendition of
medical services and the breach of the standard of care.  Therefore, we
overrule Ritchie=s final issue.

III. Conclusion

We hold that the trial court erred by not awarding pre- and
post-judgment interest to Ritchie.  Therefore, we reform the judgment to award
pre-judgment interest in the amount of $170.52, and to award post-judgment
interest in the amount of six percent per year from the date of the final
judgment, September 12, 2005, to the date that such judgment is paid, excluding
only the extension of time to file Ritchie=s brief granted on
appeal.  We overrule Ritchie=s remaining issues and affirm the judgment
as modified.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 22, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  Appellant has not raised any issues in this appeal
as to Apple Dentists
or Dr. Bijan.





[2]  Ritchie also argues there is Ano evidence to support the jury=s finding that [she] proximately caused her own harm
through Dr. Yazdi=s failure to perform a gross scaling.@  However, the jury was not asked to make specific
findings as to each alleged act of negligence.  Because there is ample evidence
in the record  to support the jury=s
finding of contributory negligence, we need not address this specific argument.





[3]  Ritchie raised the expert fees issue as a separate argument. 
Yet we need not reach it separately because, even if we were to agree with
Ritchie that expert fees in a medical malpractice case may be taxed against the
losing party, she would not be entitled to them in light of the trial court=s order that each party should bear its own costs.