**Appeal Dismissed and Memorandum Opinion filed December 8, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00091-CV

### EXXON MOBIL CORPORATION, Appellant

### V.

### TRADE EXPLORATION CORP., BRYAN C. WAGNER, AND DUER WAGNER, III, Appellees

**On Appeal from the 189th District Court
Harris County, Texas
Trial Court Cause No. 2009-60726**

## M E M O R A N D U M   O P I N I O N

Appellant Exxon Mobil Corporation ("Exxon") sued Trade Exploration Corporation, Bryan C. Wagner, and Duer Wagner, III (collectively, the "Wagners"), asserting claims in connection with Exxon's settlement of two lawsuits. The parties proceeded to trial and the jury found in favor of Exxon. Exxon moved the trial court to enter judgment on the verdict and the Wagners filed a motion for judgment notwithstanding the verdict.

The trial court signed two orders with respect to the parties' motions: the first order granted in part the Wagners' motion and reduced Exxon's requested damages from approximately $71 million to $28 million. The second order was a modified version of the Wagners' proposed final judgment, which the trial court titled an "Interlocutory Judgment".

Exxon appealed and asserts that the trial court erred by granting in part the Wagners' motion for judgment notwithstanding the verdict. The Wagners filed a cross-appeal and contend, amongst other issues, that this court lacks jurisdiction over the appeal because the trial court did not sign a final judgment. For the reasons below, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Exxon and the Wagners executed a purchase and sale agreement in 1994, through which the Wagners acquired from Exxon certain oil and gas interests in Louisiana. As a part of this transaction, the Wagners agreed to "release, defend, indemnify, and hold [Exxon] harmless from and against all damages, losses, expenses . . . civil fines, penalties, and other costs and liabilities as a result of claims, demands, and causes of action[.]"

Twelve years later, Exxon was sued in three separate actions in Louisiana state court: *M.J. Farms, LTD v. Exxon Mobil Corp., et al.*, *Agri-South Group L.L.C. v. Exxon Mobil Corp., et al.*, and *Avahoula Resources, L.L.C. v. Exxon Mobil Corp., et al.*[1] The plaintiffs in these cases alleged environmental damage to the land conveyed from Exxon to the Wagners and sought restoration and remediation of the property. The *M.J. Farms* action settled for $59 million, $57.5 million of which was paid by Exxon. *Agri-South* settled for $14.11 million and

---

[1] All three suits were filed in the seventh judicial district court of Catahoula Parish, Louisiana.

2

*Avahoula* settled for no cost. In all three cases, Exxon requested defense and indemnification from the Wagners, which the Wagners declined to provide.

In September 2009, Exxon sued the Wagners in the underlying proceeding, seeking indemnification under the parties' purchase and sale agreement for the *M.J. Farms* and *Agri-South* settlements. To assist their defense, the Wagners moved to compel the production of certain documents pertinent to Exxon's defense and settlement in the *M.J. Farms* action. Exxon resisted the motion to compel by invoking the attorney-client privilege. The trial court determined that Exxon waived the attorney-client privilege via offensive use and ordered the production of specific documents. Exxon filed a petition for writ of mandamus in this court, which we conditionally granted. *See In re Exxon Mobil Corp.*, 389 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding [mand. denied]).

In March 2016, the parties announced ready for trial. At that time, another defendant, James Finley, announced that he had reached a settlement with Exxon. Exxon then non-suited its claims against Finley.

Exxon and the Wagners proceeded to trial and, after the close of evidence, the jury was asked whether the *M.J. Farms* and *Agri-South* settlements were "made in good faith and reasonable and prudent under the circumstances?" The jury responded "yes" for both settlements. Exxon filed a "Motion for Judgment on the Jury Verdict" and asked the trial court to award it damages for the full amounts it paid for the *M.J. Farms* and *Agri-South* settlements: $57.5 million and $14.11 million, respectively. The Wagners filed a motion for judgment notwithstanding the verdict (the "JNOV motion"). The trial court held a hearing on the motions on May 23, 2016.

After the hearing, Exxon filed a proposed final judgment and the Wagners filed a supplemental brief in support of their JNOV motion. The Wagners filed a

second supplemental brief in January 2018.  The trial court held a second hearing on the Wagners' motion on January 12, 2018.

On November 19, 2018, the Wagners filed with the trial court a letter supplementing their post-trial motion briefing, which included a proposed final judgment.  The Wagners filed a second proposed final judgment on December 31, 2018.

The trial court signed two judgment-related orders on December 31, 2018.[2] The first order granted in part the Wagners' JNOV motion and "disregard[ed] the jury verdict on the *M.J. Farms* settlement but only to the extent it exceeds $14.11 million."  The second order made the following modifications to the Wagners' first proposed final judgment:

- The Wagners' order was entitled "Proposed Final Judgment"; the trial court modified the title to read "Interlocutory Judgment".

- The trial court awarded Exxon $14.11 million for the *M.J. Farms* and *Agri-South* settlements, for a total of $28.22 million.

- The trial court struck through the paragraphs addressing prejudgment interest calculations and the offsets for the Finley settlement.  The trial court inserted language instructing the parties "to recalculate the prejudgment interest amounts based upon the actual damages amounts used [in] this interlocutory judgment and to furnish such recalculated figures for inclusion in a final judgment."

- The trial court struck through the following sentences:  "The Court orders execution to issue for the Final Judgment.  The court further orders that all other relief not expressly granted herein is denied.  This judgment finally disposes of all claims and parties and is appealable."

---

[2] Judge William Burke, who presided over the underlying proceedings and signed these orders, did not run for re-election in 2018.  December 31, 2018 was his last day in office.

4

On January 30, 2019, Exxon filed a notice of appeal. The Wagners filed a cross-notice of appeal two weeks later.

ANALYSIS

We begin with the parties' jurisdictional arguments, which dispose of the appeal in this case. These arguments focus on the finality of the trial court's December 31, 2018 order entitled "Interlocutory Judgment". The Wagners assert that this order does not constitute a final judgment and therefore the appeal should be dismissed for lack of jurisdiction. In response, Exxon contends that the order is a final judgment that properly disposes of all claims and parties in the underlying proceeding.

## I. Standard of Review and Governing Law

We consider *de novo* the legal question of whether we have jurisdiction over an appeal. *CMH Homes v. Perez*, 340 S.W.3d 444, 447 (Tex. 2011); *Nunu v. Risk*, 567 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Appellate courts generally have jurisdiction only with respect to final judgments unless the appeal is authorized by statute. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001); *Fleming & Assocs., L.L.P. v. Kirklin*, 479 S.W.3d 458, 460 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

When a judgment lacks clarity, answering the question of finality can prove difficult. We begin by reiterating the basic principles that govern our analysis. As the supreme court has stated, a judgment is final "'if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties.'" *In re Vaishangi, Inc.*, 442 S.W.3d 256, 259 (Tex. 2014) (orig. proceeding) (per curiam) (quoting *Bison Bldg. Materials, Ltd. v. Aldridge*, 422

5

S.W.3d 582, 585 (Tex. 2012)).

Layered upon this foundation is a presumption of finality that applies where, as here, the judgment in question was signed after a conventional trial on the merits. *See N. E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897-98 (Tex. 1966); *see also Vaughn v. Drennon*, 324 S.W.3d 560, 562-63 (Tex. 2010) (per curiam); *Moritz v. Preiss*, 121 S.W.3d 715, 718-19 (Tex. 2003). Commonly referred to as the "*Aldridge* presumption", this principle provides that:

> When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to [our procedural rules], it will be presumed for all purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.

*Aldridge*, 400 S.W.2d at 897-98. Under the *Aldridge* presumption, a judgment need not address every party and every claim to be a final judgment for purposes of appeal. *Vaughn*, 324 S.W.3d at 563.

But the supreme court "does not disagree" with the notion that the *Aldridge* presumption "should not be rigidly applied to make judgments final contrary to the litigants' reasonable expectations." *John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738, 740 (Tex. 2001) (per curiam); *see also Butler v. Amegy Bank, N.A.*, No. 14-15-00410-CV, 2016 WL 3574685, at *4 (Tex. App.—Houston [14th Dist.] June 30, 2016, no pet.) (mem. op.). Therefore, the *Aldridge* presumption is rebuttable and applies only in the absence of a contrary showing in the record. *Aldridge*, 400 S.W.2d at 898; *see also In re R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019) (where the order following trial was "not conclusive of finality", the supreme court "examine[d] the record to determine the trial court's intent"). "If there is any doubt as to the judgment's finality, then '[f]inality must be resolved by

a determination of the intention of the court [as] gathered from the language of the decree and the record as a whole, aided occasionally by the conduct of the parties.'" *Vaughn*, 324 S.W.3d at 563 (quoting *Lehmann*, 39 S.W.3d at 203); *see also Butler*, 2016 WL 3574685, at *5 (applying *Vaughn*'s principles to determine if judgment was final).

## II.     Application

Here, the trial court's December 31, 2018 "Interlocutory Judgment" is not conclusive regarding finality — instead, the trial court took great pains to remove all indicia of finality. Therefore, we examine the language of the order and the record as a whole to determine whether the trial court intended the order to be a final judgment. *See Vaughn*, 324 S.W.3d at 563.

As stated above, the trial court's "Interlocutory Judgment" is a modified version of the Wagners' first proposed final judgment that contains the following changes: (1) the order is retitled "Interlocutory Judgment"; (2) the order's finality language is struck out; (3) the paragraphs addressing prejudgment interest calculations and offsets for the Finley settlement are struck out; and (4) the parties are instructed to "recalculate the prejudgment interest amount . . . for inclusion in a final judgment."

These modifications clearly show that the trial court did not intend the "Interlocutory Judgment" to serve as a final judgment in the underlying proceeding. The trial court removed all finality language, both in the title and the body of the order. *See Bacon Tomsons, Ltd. v. Chrisjo Energy, Inc.*, No. 01-15-00305-CV, 2016 WL 4217254, at *10-11 (Tex. App.—Houston [1st Dist.] Aug. 9, 2016, no pet.) (mem. op.) (order rebutted *Aldridge* presumption of finality because it did "not contain any language demonstrating that it was intended to be final"); *Butler*, 2016 WL 3574685, at *5 (judgment rebutted *Aldridge* presumption because

it was titled "partial" and "partial" was handwritten). The trial court also expressly left unresolved remaining issues regarding prejudgment interest and instructed the parties to recalculate these amounts "for inclusion in a final judgment." *See In re B.W.S.*, No. 05-15-01207-CV, 2016 WL 7163866, at *2 (Tex. App.—Dallas Nov. 28, 2016, no pet.) (mem. op.) ("When a document . . . instructs the parties to prepare an appropriate final order, this is evidence that the trial court did not intend the document to be a final judgment."); *Butler*, 2016 WL 3574685, at *5 (concluding the record rebutted the *Aldridge* presumption, this court noted that the trial court instructed the parties that it would "await[] instructions from counsel pursuant to the agreement of the parties" and would "not memorialize that judgment until such time as counsel brings it to the Court's attention"); and *In re M.G.F.*, No. 04-15-00591-CV, 2016 WL 519650, at *2 (Tex. App.—San Antonio Feb. 10, 2016, no pet.) (mem. op.) (*Aldridge* presumption rebutted because the order "expressly reserve[d]" certain issues "for consideration at a later date"). These modifications rebut the application of the *Aldridge* presumption.

The same can be said for the parties' conduct herein. At the January 12, 2018 hearing on the Wagners' JNOV motion, counsel for both parties indicated that they anticipated post-judgment briefing. Specifically, counsel for the Wagners stated:

> I do want to bring two matters to the Court's attention and one is directly related to our Motion for Judgment Notwithstanding Verdict. The other is in a matter that is probably premature in the sense that we have not filed a motion for new trial yet. But I do want to alert the Court to matters that are, at least, baffling me and will be the subject of a motion for new trial in this matter.

And counsel for Exxon stated:

> And so I'm happy to reserve the rest of that [argument], because I think it really is a motion for new trial type of argument, when I can

8

have the time to gather up all that to provide to you.

Despite these statements, neither party filed a motion for new trial after the trial court signed the December 31, 2018 "Interlocutory Judgment". *See* Tex. R. Civ. P. 329b(a) (motion for new trial must be filed within 30 days of the trial court's signing of the judgment). This absence counsels against the order's finality. *See In re B.W.S.*, 2016 WL 7163866, at *2 (concluding that the parties "did not treat the Memorandum as a final judgment", the court noted that "Mother did not file post-judgment motions after the court sent the Memorandum"). Considered in conjunction with the language of the "Interlocutory Judgment", we conclude that the record shows the trial court did not intend the "Interlocutory Judgment" to constitute a final judgment. Therefore, the order and the record rebut the application of the *Aldridge* presumption. *See Vaughn*, 324 S.W.3d at 563. To hold otherwise would render a result contrary to litigants' reasonable expectations. *See John*, 58 S.W.3d at 740.

Arguing that the "Interlocutory Judgment" nonetheless is final despite its strike-outs and interlineations, Exxon asserts that the judgment "disposes of all claims and parties." We disagree. Because the "Interlocutory Judgment" expressly reserved certain issues regarding the calculation of prejudgment interest, it did not dispose of all claims in the underlying proceeding.

A judgment that finally disposes of all remaining claims and parties, based on the record in the case, is final. *See Lehmann*, 39 S.W.3d at 200. But a final judgment must also be certain so that it may be enforced by writ of execution. *In re Blankenhagen*, 513 S.W.3d 97, 100 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding [mand. denied]); *see also H.E. Butt Grocery Co. v. Bay, Inc.*, 808 S.W.2d 678, 680 (Tex. App.—Corpus Christi 1991, writ denied). Because ministerial officers must be able to carry the judgment into execution without

ascertaining additional facts, a judgment awarding an unascertainable amount cannot be final. *In re Blankenhagen*, 513 S.W.3d at 100.

Failing to specify the amount of prejudgment interest does not necessarily make a judgment uncertain or indefinite. *See Ziemian v. TX Arlington Oaks Apartments, Ltd.*, 233 S.W.3d 548, 553 (Tex. App.—Dallas 2007, pet. struck); *Olympia Marble & Granite v. Mayes*, 17 S.W.3d 437, 441 (Tex. App.—Houston [1st Dist.] 2000, no pet.). But if the record reveals facts that call into question the date on or manner in which prejudgment interest should accrue, then the calculation of prejudgment interest is not a simple ministerial act. *See Olympia Marble & Granite*, 17 S.W.3d at 442; *see also, e.g., Harris Cty. Toll Rd. Auth. v. Sw. Bell Tel., L.P.*, 263 S.W.3d 48, 55-56 (Tex. App.—Houston [1st Dist.] 2006), *aff'd*, 282 S.W.3d 59 (Tex. 2009) (because appellate court could not ascertain the date on which prejudgment interest would begin accruing, the order did not constitute a final judgment); *Zamarripa v. Sifuentes*, 929 S.W.2d 655, 657 (Tex. App.—San Antonio 1996, no writ) (same). In such a case, the judgment is not final. *See, e.g., Harris Cty. Toll Rd. Auth.*, 263 S.W.3d at 56-57; *Olympia Marble & Granite*, 17 S.W.3d at 442-43.

Here, because the record reveals issues that call into question the amount of prejudgment interest, this figure's calculation is not a mere ministerial task. The parties put forth competing prejudgment interest calculations in their proposed final judgments, as set forth below:

Exxon's Proposed Final Judgment (filed June 6, 2016)

- For actual damages awarded with respect to the *M.J. Farms* settlement, prejudgment interest would be calculated at the rate of 5% from October 7, 2011 (the date on which the Wagners were provided a copy of the unredacted settlement agreement) until September 25, 2012 (one day before the parties agreed to an effective standstill of this lawsuit while a mandamus was proceeding).

The prejudgment interest would resume at the rate of 5% from March 22, 2014 (the date on which the Texas Supreme Court denied rehearing in the mandamus) through May 1, 2016.

The amount of this interest would be reduced by $1.5 million, which represents the dollar amount Exxon received in settlement proceeds from Finley prior to trial.

- For actual damages awarded with respect to the *Agri-South* settlement, prejudgment interest would be calculated at the rate of 5% from November 25, 2014 until May 1, 2016.

The Wagners' First Proposed Final Judgment (filed December 11, 2018)

- This final judgment proposed that Exxon take nothing on its claim related to the *M.J. Farms* settlement.

- For actual damages awarded with respect to the *Agri-South* settlement, prejudgment interest would be calculated at the rate of 5% from November 25, 2014 until May 16, 2016 (the date upon which Finley's initial settlement payment was due to Exxon).

This prejudgment interest amount would be reduced by $1.5 million, representing the dollar amount Exxon received in settlement proceeds from Finley prior to trial.

Prejudgment interest would resume from March 17, 2016 through final judgment at the rate of 5%.

The Wagners' Second Proposed Final Judgment (filed December 31, 2018)

- For actual damages awarded with respect to the *M.J. Farms* settlement, prejudgment interest would be calculated at the rate of 5% from October 7, 2011 (the date on which the Wagners were provided a copy of the unredacted settlement agreement) until September 25, 2012 (one day before the parties agreed to an effective standstill of this lawsuit while a mandamus was proceeding).

The prejudgment interest would resume at the rate of 5% from March 22, 2014 (the date on which the Texas Supreme Court denied rehearing in the mandamus) through March 16, 2016 (the date upon which Finley's initial settlement payment was due to Exxon).

This prejudgment interest amount would be reduced by $1.5 million, representing the dollar amount Exxon received in settlement proceeds from Finley prior to trial.

Prejudgment interest would resume at the rate of 5% from March 17, 2016 through final judgment.

- For actual damages awarded with respect to the *Agri-South* settlement, prejudgment interest would be calculated at the rate of 5% from November 25, 2014 until final judgment.

The trial court's December 31, 2018 "Interlocutory Judgment" was based on the Wagners' first proposed final judgment. The trial court struck out all paragraphs addressing prejudgment interest and credit for the Finley settlement, and instructed the parties to "recalculate the prejudgment interest amounts based upon the actual damages amounts used in this interlocutory judgment and to furnish such recalculated figures for inclusion in the final judgment."

The trial court's instructions regarding the prejudgment interest amounts, considered in conjunction with the parties' proposed calculations, refute any suggestion that a prejudgment interest calculation would be a simple, ministerial act. Although the parties agree with respect to some portions of the calculations, significant differences remain. While both parties' prejudgment interest calculations take into account the $1.5 million in settlement proceeds Exxon received from Finley prior to trial, the instructions in the trial court's "Interlocutory Judgment" make no mention of a settlement credit. Instead, the trial court only instructs the parties to furnish prejudgment interest amounts. Since a portion of the Finley settlement was subsumed within the parties' proposed interest calculations, it is unclear whether the trial court intended to deny the settlement credit altogether or have the parties include it in their forthcoming interest calculations.

Moreover, outstanding issues regarding the Finley settlement further counsel against the finality of the trial court's "Interlocutory Judgment". In their cross-appellants' brief, the Wagners argue that (assuming we concluded the trial court's "Interlocutory Judgment" constituted a final judgment) the trial court erred by

failing to apply a settlement credit for Finley's settlement with Exxon. In response, Exxon agreed that "[a] settlement credit is appropriate" and asked that we "reform the judgment to include the [] settlement credit sought by the Wagners."

In the trial court, the parties disagreed regarding the value of the settlement credit: Exxon sought to reduce the portion of the settlement credit representing future payments to present value, whereas the Wagners sought credit for the full amount of Finley's settlement. On appeal, Exxon abandoned its present-value argument and agreed to a settlement credit representing the full amount Finley agreed to pay Exxon, stating that the "difference is not worth litigating further." But these arguments and any abandonment thereof are more appropriately developed (and ultimately resolved) in the trial court rather than on appeal, as necessary for their inclusion in a final judgment.

Because of these uncertainties, the trial court's "Interlocutory Judgment" does not dispose of all claims in the underlying proceeding and does not constitute a final judgment. *See Lehmann*, 39 S.W.3d at 200.

## III.    Dismissal

Finally, Exxon asserts that, if we conclude finality is lacking, "the proper course would be to abate temporarily, not to dismiss the appeal entirely." *See* Tex. R. App. P. 27.2 ("[t]he appellate court may allow an appealed order that is not final to be modified so as to be made final").

Addressing abatement in *Lehmann*, the supreme court stated that, "[i]f the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court." 39 S.W.3d at 206; *see also Lewin v. Mission Bend No. 5 Homeowners Ass'n, Inc.*, No. 14-16-00026-CV, 2017 WL

2959653, at \*2 (Tex. App.—Houston [14th Dist.] July 11, 2017, no pet.) (mem. op.) ("If the finality of the judgment is uncertain, an appellate court may abate the appeal to permit clarification.").  Here, as discussed above, we are not uncertain about the intent of the trial court's "Interlocutory Judgment".  After examining the language of the "Interlocutory Judgment" and the record as whole, we conclude the trial court did not intend the order to serve as a final judgment in the underlying proceeding.  *See Vaughn*, 324 S.W.3d at 563.  Nor does the order dispose of all claims in the underlying proceeding.  Therefore, it is not necessary to abate the appeal to permit the trial court to clarify its intent.  *See Lehmann*, 39 S.W.3d at 206.  The proper course of action is to dismiss the appeal for lack of jurisdiction. *See id*. at 195; *Fleming & Assocs., L.L.P.*, 479 S.W.3d at 460.

## CONCLUSION

We dismiss the appeal for lack of jurisdiction.



/s/     Meagan Hassan
        Justice


Panel consists of Justices Christopher, Jewell, and Hassan (Jewell, J., dissents without opinion).